Raphel CHERRY *v.* STATE of Arkansas

CR 01-858 66 S.W.3d 605

Supreme Court of Arkansas
Opinion delivered February 14, 2002
[Petition for rehearing denied March 21, 2002.]

*Montgomery, Adams & Wyatt, PLLC*, by: *Dale E. Adams*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellant Raphel Jerome Cherry was previously before us in *State v. Cherry*, 341 Ark. 924, 20 S.W.3d 354 (2000), wherein the State appealed the trial court's order denying the State's motion for reconsideration and granting Cherry's motion for a new trial, after the jury returned a guilty verdict and a sentence of life imprisonment for Cherry, based on juror misconduct. On appeal, we held the trial court did not abuse its discretion in granting Cherry's motion for new trial because Cherry was deprived of a fair trial where prejudice stemmed from the fact that some of the jurors may have made up their minds about his guilt or innocence before the case was submitted to them. On remand and retrial of the first-degree murder charge, Cherry was again found guilty, but this time

he received a sentence of thirty years in the Department of Corrections. Cherry, now, brings this appeal, raising three points for reversal and dismissal: whether the trial court erred when it denied Cherry's motion to dismiss on speedy-trial grounds, whether the trial court erred in denying Cherry's motion for continuance, and whether the trial court erred in allowing the State to cross-examine Cherry during the sentencing phase of the trial. We hold the trial court's rulings were correct, and, therefore, affirm.

*Speedy Trial*

On remand, Cherry's retrial began on January 24, 2001. However, in a pretrial motion, Cherry moved to dismiss for violation of his right to speedy trial as provided in Arkansas Rule of Criminal Procedure 28.1. Cherry argued that the speedy-trial time began running on September 23, 1999 in accordance with Arkansas Rule of Criminal Procedure 28.2(c), the date the trial court granted a new trial.

In Arkansas, a defendant's right to a speedy trial is governed by Arkansas Rules of Criminal Procedure 28.1 through 28.3 (2001). A defendant charged in circuit court must be brought to trial within twelve months, excluding periods of necessary delay, of the earlier of the date he was arrested or the date charges were filed; otherwise, the defendant is entitled to an absolute discharge and a bar to prosecution. Ark. R. Crim. P. 28.1(c) & 28.2(a) (2001). Where a defendant is retried following the grant of a new trial, the time commences running on the date the new trial was ordered. Ark. R. Crim. P. 28.2(c) (2001). Periods of necessary delay are set forth in Rule 28.3. Once a defendant makes a *prima facie* showing that he was brought to trial beyond the twelve months, the burden shifts to the State to show reasons for such delay. *Jones v. State*, 329 Ark. 603, 951 S.W.2d 308 (1997). The speedy-trial clock is tolled during a period resulting from other proceedings concerning the defendant or during other periods of delay for good cause. Ark. R. Crim. P. 28.3(a) & 28.3(h) (2001). On appeal, this Court reviews the excludability of periods of time for the speedy-trial calculation *de novo. Jones; supra.*

In this case, Cherry argues that the time period began running on the date the new trial was granted, September 23, 1999, and, not, as the State contends, on the date the mandate was issued after the court affirmed the trial court's grant of a new trial, September 7, 2000. Cherry argues Rule 28.2(c), which provides:

> The time for trial shall commence running, without demand by the defendant, from the following dates:
>
> . . . .
>
> (c) if the defendant is to be retried following a mistrial, an order granting a new trial, or an appeal or collateral attack, the time for trial shall commence running from the date of mistrial, order granting a new trial or remand.

Ark. R. Crim. P. 28.2(c) (2001). Cherry argues he was to be retried not because of an appeal, but because of the granting of a new trial. Cherry contends that this rule lists several events at which the time for trial should commence running, namely, it contains the common principle that the time for retrial begins upon the date of the event that requires the retrial. Thus, if that event were the grant of a new trial, the time for retrial begins running upon the date the new trial was granted. If retrial was made necessary due to an appeal, the time for retrial begins running on the date the mandate is issued. Cherry also asserts that the retrial was necessary because the trial court granted a new trial, hence the time for retrial commenced running on September 23, 1999, the date the trial court granted the new trial.

Cherry further argues that there are no excludable periods of time provided for in Rule 28.3, that would lengthen the time for trial to be brought by the State. Cherry contends that the time in which the State's appeal was pending was not excludable from the calculation because it is not provided for in Rule 28.3(a), which states:

> The period of delay resulting from other proceedings concerning the defendant, including but not limited to an examination and hearing on the competency of the defendant and the period during which he is incompetent to stand trial, hearings on pretrial motions, interlocutory appeals, and trials of other charges against the defendant.

Ark. R. Crim. P. 28.3(a). Cherry asserts that this rule is intended for only those appeals in which the defendant brings, and not the State.

However, the State relies on *Thornton v. State* as controlling authority. 317 Ark. 257, 878 S.W.2d 378 (1994). In that case, the State appealed a trial court's dismissal order of the charges against

the defendant, which this court reversed. On remand, the defense moved for dismissal based on speedy trial, and the trial court denied the motion. This court reversed the trial court's denial of the motion to dismiss for the denial of speedy trial, and held that the time between the filing of the State's notice of appeal and this court's issuance of mandate in the state's appeal, which reinstated the State's charges against the defendant were excluded. This Court further held that:

> Rule 28.2(c), the rule relied on by the state, provides that, if the defendant is to be retried following a mistrial, an order granting a new trial, or an appeal or collateral attack, the time for trial shall commence running from the date of mistrial, order granting a new trial or remand. Before Rule 28.2(c) applies, the provision plainly presumes, at the least, the state had commenced trying its case against the defendant and the trial concluded in a mistrial or the defendant had been tried but his conviction had been set aside, appealed, or collaterally attacked. In the *Clements* case relied upon by the state, the defendant had been tried, convicted and sentenced, but his conviction was overturned on appeal and remanded for a new trial.

*Thornton v. State, supra; Clements v. State,* 312 Ark. 528, 851 S.W.2d 422 (1993). Therefore, this court held that the speedy-trial clock was tolled during the pendency of the State's appeal pursuant to Rule 28.3. *Thornton, supra.*

Cherry contends that the holding of *Thornton* and the plain wording of Rule 28.2(c) compels that the time for retrial commences upon the date of the event that precipitated the retrial. That event in the case at hand, Cherry asserts, was the trial court's grant of a new trial, which was affirmed by this court, and not this court's mandate following the affirmance of that order. Thus, the time for retrial here commenced on September 23, 1999, the date the trial court granted a new trial, and the State has until September 2000, less any excludable periods in which to try Cherry.

Cherry additionally claims there was no excludable periods of time that would lengthen the time for bringing the retrial. Rule 28.3 states:

> The period of delay resulting from other proceedings concerning the defendant, including but not limited to an examination and hearing on the competency of the defendant and the period during which he is incompetent to stand trial, hearings on pretrial

> motions, interlocutory appeals, and trials of other charges against the defendant.

Ark. R. Crim. P. 28.3(a) (2001). Cherry claims that since there were no competency issues, pretrial concerns, interlocutory appeals, or other charges against him, there were no periods of time which could be construed as excludable.

The State, in this case, argues that the time in which the State appealed the trial court's grant of a new trial on the motion by Cherry was another proceeding concerning the defendant under Rule 28.3, regardless of the fact that it was not an appeal by Cherry. The State relied upon *Thornton*, where the trial court first dismissed the charges against Thornton and set him free, and then the State appealed that dismissal and won. Thornton, later, moved to dismiss the charges based on speedy-trial grounds, which the trial court denied. This court held that the trial court should have granted the motion to dismiss on speedy-trial grounds and reversed and dismissed the case. This court held that the time spent on the state's appeal was excluded, and even excluding that amount of time, the State took too long. *Thornton v. State,* 317 Ark. 257, 878 S.W.2d 378 (1994).

Cherry distinguishes his case from that of *Thornton* by stating that Thornton had been dismissed and was freed from state custody. Cherry further argues that under *United States v. Loud Hawk,* 474 U.S. 302 (1986), his Sixth Amendment right to speedy trial had been violated. This court cited *Loud Hawk* in *Thornton* stating:

> It is also settled that, for Sixth Amendment purposes, the appeal time, during which Thornton's felony charge had been dismissed freeing him of all liberty restrictions, should be excluded from the length of delay considered under the Speedy Trial Clause.

*Thornton v. State, supra; Loud Hawk, supra.* The United States Supreme Court in *Loud Hawk* held that "an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay," however, there are three factors that are to be considered in determining whether a government interlocutory appeal would qualify as a good reason for delay, (1) the strength of the Government's position on the appealed issues; (2) the importance of the issue in the posture of the case; and (3) in some cases — the seriousness of the crime. *Loud Hawk, supra; Barker v. Wingo,* 407 U.S. 514 (1972). Cherry asserts that if this tripartite analysis is applied to this case, it

would be clear that the State's appeal would not have weighed in its favor. However, the Sixth Amendment issue was not raised below.

■ We cannot consider arguments raised for the first time on appeal. *Hill v. State*, 341 Ark. 211, 16 S.W.3d 539 (2000); *Wallace v. State*, 326 Ark. 376, 931 S.W.2d 113, (1996). Even a constitutional argument, raised for the first time on appeal, will not be addressed. *Claiborne v. State*, 319 Ark. 537, 892 S.W.2d 324 (1995). We are therefore precluded from addressing these arguments on appeal. *Woods v. State*, 342 Ark. 89, 27 S.W.3d 367 (2000).

Cherry asserts that the factor weighing most heavily against the State in this matter is the fact that Cherry was incarcerated while the State took its appeal, unlike the defendants in *Thornton* and *Loud Hawk*. Cherry contends that where the State takes a discretionary and unnecessary appeal while the defendant is incarcerated, the time should be held against the State for purposes of the speedy-trial calculation. Therefore, Cherry argues this case must be reversed and dismissed.

■ However, this court does not accept such an argument. Under Ark. R. Crim. P. 28.3(h), other periods of delay for good cause are excluded in computing the time for trial. Therefore, we hold that the speedy-trial clock was tolled during the pendency of the State's appeal to this court. We allow the State to bring appeals to this court; therefore, logical reasoning would adhere to the speedy-trial clock being tolled during such matters. Further, this court will not address the factors set forth in the United States Supreme Court case of *Loud Hawk* since Ark. R. Crim. P. 28.3(h) controls. Therefore, we affirm the trial court's order denying the speedy-trial violation.

### Motion for Continuance

Before retrial on November 26, 2000, Cherry moved for the allocation of $10,000.00 to hire a pathologist, who was needed because the state's pathologist had testified in the first trial that the victim has suffered from sickle cell anemia which contributed to her death. However, just how large a factor the sickle cell anemia played in the victim's death could not be estimated by the state's pathologist. Cherry's motion for allocation was granted, but was limited to $5,000.00, on December 12, 2000.

In a pretrial hearing, held two days before trial, on January 22, 2001, Cherry moved for a continuance in order to obtain the services of a pathologist knowledgeable in sickle cell anemia. Cherry explained that he ran into great difficultly in finding such a pathologist, and could not find one in Arkansas, but Cherry did locate an expert in Georgia. This expert would talk with Cherry, and asserted his testimony would be relevant to purposefulness. Cherry argued that the testimony by such expert would be relevant to premeditation and deliberation. Cherry entered into the record an affidavit by the pathologist, Geral T. Gowitt, M.D., who was at the time the Chief Medical Examiner for DeKalb County, Georgia. He had reviewed the autopsy report, the police file with photographs, but had not reviewed the slides produced by the Arkansas Medical Examiner. Dr. Gowitt's fee was $250.00 an hour, with a minimum retainer of $2,500.00. Based on his preliminary review of this case, he believed he could be of substantial assistance to the defense. However, he was unable to testify without payment of his retainer and four to five months advance notice of any trial date. At this pretrial hearing, the trial court denied the motion for continuance.

On the day of the trial, Cherry renewed his motion of continuance and entered into the record an affidavit from the Public Defender Commission, stating that the funds for the hiring of expert witnesses had already been depleted. Again, the motion was denied by the trial court.

■ In deciding whether to grant or deny a motion for a continuance, the trial court should consider the movant's diligence, the probable effect of the testimony at trial, the likelihood of procuring the witness' appearance at trial, and the filing of an affidavit stating the facts that the witness would testify to along with a statement that the affiant believed the facts to be true. *Anthony v. State*, 339 Ark. 20, 2 S.W.3d 780 (1999). A lack of diligence alone is sufficient basis to deny a motion for a continuance, and the burden of showing prejudice rests of the appellant. *Anthony, supra.*

■ The law on continuances for the lack of a witness is contained in Ark. Code Ann. § 16-63-402(a) (1987) and Arkansas Rules of Criminal Procedure 27.3. The following factors are to be considered by a trial court faced with a motion for a continuance for the lack of a witness:

> (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of

the witness in the event of a postponement; and (4) the filing of an affidavit, stating not only what facts the witness would prove, but also that the appellant believes them to be true. To demonstrate error on appeal, an appellant must show that he or she was prejudiced by the trial court's denial of the continuance.

*Dyer v. State*, 343 Ark. 422, 36 S.W.3d 724 (2001); *Morgan v. State*, 333 Ark. 294, 971 S.W.2d 219 (1998); *Travis v. State*, 328 Ark. 442, 944 S.W.2d 96 (1997).

Cherry contends that all of these factors in this case are present and are in appellant's favor. Cherry asserts that he tried to find a forensic pathologist familiar with sickle cell anemia, however was unable to locate such an expert without assurances that he would be able to pay. Nevertheless, Cherry did locate the pathologist in Georgia who stated the probable effect of the testimony at trial, and he set forth the witness's availability.

Cherry asserts that prejudice was shown by appellant's inability to seriously attack Dr. Erickson's, the State's expert, testimony that Cherry had to have applied pressure continuously to the victim's neck for several minutes somewhat short of four minutes in order to cause her death. This permitted the State an easy inference of a purposeful mental state, which was required to convict under the charge because there was nothing to rebut the testimony. Cherry further argues that the State, in its closing argument, made certain references to the expert called by the State and how he was the "only one who testified." Therefore, the denial of Cherry's continuance also amounted to a denial of an expert witness to an indigent who needed the use of such expert.

The State asserts that the trial court did not abuse its discretion by denying Cherry's motion for a continuance because Cherry did not diligently obtain the expert's testimony. The State explains that a new trial was ordered on September 23, 1999, and the grant of a new trial was affirmed on September 7, 2000. The State argues that Cherry's motion, made two days before trial, was hardly diligent, because he had more than five months in which to procure the services of an expert witness. His lack of diligence, therefore, was itself a sufficient basis for the trial court to deny his motion for a continuance. Furthermore, the State contends that regardless of the financial status of the Commission, the record shows that Cherry did not even locate the expert until shortly before trial.

■ This Court's review of the denial of a motion for a continuance is under the abuse-of-discretion standard. *Anthony v. State, supra.* This court shall grant a continuance only upon a showing of good cause and only for so long as it is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case. Ark. R. Crim. P. 27.3 (2001). An appellant must not only demonstrate that the trial court abused its discretion by denying the motion for a continuance, but also show prejudice that amounts to a denial of justice. *Anthony, supra.*

■ We hold that the trial court did not abuse its discretion by denying Cherry's motion for a continuance. Furthermore, the trial court's denial demonstrated no prejudice to Cherry. Cherry had the opportunity to cross-examine the State's expert witness to discredit his findings, and was allowed the opportunity to hire his own expert. Cherry only brought this motion for a continuance two days before retrial was to begin, when he had five months to procure such an expert. Furthermore, in the affidavit by the expert, it was only stated that he would be of substantial assistance to the defense. He did not state specific instances in which he would testify to, not did he state what he would testify to. Here, Cherry cannot show the trial court abused its discretion by denying the motion for continuance, nor can he show prejudice that amounted to a denial of justice; therefore, we affirm the trial court's order denying the motion for a continuance.

### Cross-Examination During Sentencing Phase of Retrial

Cherry did not testify during the guilt phase of his trial, but he did testify in his own behalf during the sentencing phase of his trial. During his testimony, he sympathized with the family of the victim, but did not take responsibility for the death, stating "I can't say anything but I never touched Jerri. And that's the truth." On cross-examination, the prosecutor started off with the following question: "So, Mr. Cherry, all these witnesses came in here and lied." Defense counsel objected to this line of questioning on the basis that the cross-examination concerned the state's case-in-chief. The trial court overruled the objection, and the prosecutor then went on to discuss the evidence introduced by the State in the penalty phase.

Cherry asserts that in the penalty phase of a criminal trial, the issue to be decided is the sentence the jury will assess. *State v. Robbins*, 343 Ark. 262, 27 S.W.3d 336 (2001). Cherry argues that the line of questioning by the prosecutor had nothing to do with the sentence Cherry was to be assessed by the jury or his credibility, but rather was a rehash of the state's evidence introduced in the guilt phase with Cherry's reaction to such evidence.

The State continued to cross-examine appellant, confronting him with the evidence against him, and the trial court permitted the appellant to maintain a continuing objection to the State's line of questioning. The State argues that evidence introduced in the guilt phase may be considered by the jury in the sentencing phase, regardless of whether it is introduced in the sentencing phase. Ark. Code Ann. § 16-96-101(2) (Supp. 2001). Furthermore, the rules of evidence do not apply in sentencing proceedings. Ark. R. Evid. 1101(a)(3) (2001). The State claims that Cherry denied that he had committed the murder for which he had just been convicted. Because he made that denial on direct examination, it was permissible for the State to cross-examine his claim of innocence in light of the evidence that the jury found persuasive enough to satisfy them beyond a reasonable doubt that he had purposefully killed the victim. The State argues, therefore, that the trial court did not abuse its discretion by allowing the cross-examination.

 We find no error in allowing such cross-examination. Cherry decided to testify on his own behalf during the sentencing phase of his retrial, therefore was subject to cross-examination on his testimony. Furthermore, because of Cherry's testimony, the State has the right to cross-examine him on his claim of innocence. Therefore, we affirm the trial court's order allowing the State to cross-examine Cherry during the penalty phase of his trial.

In conclusion, we affirm the trial court's order denying Cherry's motion to dismiss on speedy-trial grounds, the trial court's order denying Cherry's motion for a continuance, and the trial court's ruling in allowing the State to cross-examine Cherry during the penalty phase of his trial.

Affirmed.