Christopher Charles YARBROUGH *v.* STATE of Arkansas

CR 07-07                                        257 S.W.3d 50

Supreme Court of Arkansas
Opinion delivered May 10, 2007

*Self Law Firm*, by: *Joseph C. Self*, for appellant.

*Dustin McDaniel*, Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Christopher Charles Yarbrough was convicted by a jury of possession of marijuana with intent to deliver and possession of drug paraphernalia, for which he received consecutive sentences of sixty months and thirty-six months, respectively, in the Arkansas Department of Correction. On appeal, he argues that his right to speedy trial was violated and that the circuit court erred in denying his motion to suppress physical evidence seized during a traffic stop. In an unpublished opinion, the Arkansas Court of Appeals reversed and dismissed Yarbrough's convictions on the ground that his right to speedy trial was violated; the motion to suppress was not addressed. *Yarbrough v. State*, CACR05-1296, slip op. at 1 (Ark. App. Dec. 13, 2006). The State petitioned this court for review, contending that the decision of the court of appeals is in conflict with prior case law, and is therefore in error. We granted the State's petition for review pursuant to Ark. Sup. Ct. R. 1-2(e) (2006). When we grant review following a

decision by the court of appeals, we review the case as though the appeal was originally filed with this court. *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997). Upon such review, we find no error and affirm.

On November 1, 2004, pursuant to Rule 28.1(c) of the Arkansas Rules of Criminal Procedure, Yarbrough filed a motion to dismiss, asserting that his right to speedy trial had been violated due to the State's failure to bring him to trial within twelve months of the date of his arrest. Following a hearing on the motion to dismiss, the circuit court denied the motion, finding that two excluded periods of time existed, totaling sixty days. Yarbrough promptly filed a petition for writ of prohibition, which this court denied without prejudice.

Prior to trial, Yarbrough filed a motion to suppress physical evidence. At a hearing on the motion, he asserted that the marijuana seized during the traffic stop should be suppressed because the purpose for the traffic stop had ended before the police officer sought permission to search the automobile. Based upon the testimony and evidence elicited at the hearing and arguments of counsel, the circuit court denied Yarbrough's motion to suppress, finding that there was a lawful stop; that there was no unreasonable detention; and that the detention was based on reasonable suspicion, as well as probable cause established through a consensual search and a drug-dog alert to the presence of drugs.

For his first point on appeal, Yarbrough argues that the circuit court erred in denying his motion to dismiss the case against him due to a violation of the speedy-trial rules. Specifically, he challenges two time periods that the circuit court excluded from its speedy-trial calculations. On appeal, we conduct a de novo review to determine whether specific periods of time are excludable under our speedy-trial rules. *Cherry v. State*, 347 Ark. 606, 66 S.W.3d 605 (2002).

Under Rule 28.1 of the Arkansas Rules of Criminal Procedure, a defendant must be brought to trial within twelve months unless there are periods of delay that are excluded under Rule 28.3. Ark. R. Crim. P. 28.1(c) (2006); *Gamble v. State*, 350 Ark. 168, 85 S.W.3d 520 (2002); *Doby v. Jefferson County Circuit Court*, 350 Ark. 505, 88 S.W.3d 824 (2002). If the defendant is not brought to trial within the requisite time, the defendant is entitled to have the charges dismissed with an absolute bar to prosecution. Ark. R. Crim. P. 30.1 (2006); *Gamble v. State, supra; Doby v. Jefferson County*

*Circuit Court, supra.* Once a defendant establishes a prima facie case of a speedy-trial violation, i.e., that his or her trial took place outside of the speedy-trial period, the State bears the burden of showing that the delay was the result of the defendant's conduct or was otherwise justified. *Gamble v. State, supra*; *Doby v. Jefferson County Cir. Ct., supra.*

In the case before us, Yarbrough was arrested on October 30, 2003. On November 1, 2004, he filed a motion to dismiss for violation of his speedy-trial rights based on a scheduled trial date of November 8, 2004. We have held that the filing of a speedy-trial motion tolls the running of the time for a speedy trial under our rules. *Doby v. Jefferson County Circuit Court, supra.* Here, the State concedes that Yarbrough made a prima facie showing of a speedy-trial violation, and that the burden shifted to the State to show that the delay was the result of the defendant's conduct or was otherwise justified. Thus, we must determine whether the circuit court correctly excluded the challenged time periods from its speedy-trial calculations.

As to the first time period, Yarbrough argues that the circuit court erred in finding that his case was continued because he was late for the court's scheduled arraignment hearing on December 17, 2003. The circuit court's order stated in pertinent part:

> 1. 12 days from December 17, 2003 to December 29, 2003. The case was continued because the defendant was late to court for his arraignment. A Failure to Appear warrant was issued when he failed to appear at the time required. That warrant was recalled upon his appearance later in the day of December 17. When the warrant was recalled and the defendant was found in contempt of court and fined $200.00 and ordered to appear on December 29, 2003 for arraignment.

Under Rule 28.3 of the Arkansas Rules of Criminal Procedure, a time period excluded in computing the time for trial shall be set forth by the court in a written order or docket entry, but it shall not be necessary for the court to make the determination until the defendant has moved to enforce his right to a speedy trial pursuant to Rule 28 unless it is specifically provided to the contrary. Ark. R. Crim. P. 28.3 (2006).

In the instant case, it is undisputed that Yarbrough arrived late for the arraignment hearing on December 17, 2003. As a result, the circuit court continued his case until December 29,

2003, and issued a failure to appear warrant, which was recalled when Yarbrough finally appeared in court on December 17, albeit after the scheduled hearing time. At the hearing on the motion to dismiss, the circuit court explained that, due to Yarbrough's tardiness, it was impossible to proceed with his arraignment in the proper manner. Indeed, as the circuit court explained, when a defendant does not arrive at the proper time, circumstances are such that the prosecutor and defense counsel will most likely no longer be present.

Here, Yarbrough's failure to appear at the scheduled time on December 17, 2003, delayed the appointment of defense counsel until December 29, 2003. The record reflects a docket entry on December 17, 2003, stating that Yarbrough failed to appear, a bench warrant was issued, and bond was set at $10,000. According to the next docket entry, the defendant appeared late, the bench warrant was set aside, the court continued the case until December 29, 2003, and Yarbrough was held in contempt and ordered to pay a fine of $200. Thus, the record includes docket entries made at the time of the occurrence that memorialized the reason for the delay in the proceedings. We will uphold excluded periods without a written order or docket entry where the record clearly demonstrates that the delays were attributable to the defendant or legally justified and where the reasons for the delays were memorialized in the proceedings at the time of the occurrence. *Romes v. State*, 356 Ark. 26, 144 S.W.3d 750 (2004).

■ Arkansas Rule of Criminal Procedure 28.3(h) provides that "other periods of delay for good cause" shall be excluded in computing the time for trial. Ark. R. Crim. P. 28.3(h) (2006). This court has explained that when a trial is postponed because of the defendant, that is "good cause" to exclude the time attributable to the delay. *Gamble v. State, supra.* Here, the arraignment had to be rescheduled due to Yarbrough's failure to appear and subsequent late arrival. It is clear that the delay was his fault. Thus, there was "good cause" to exclude the time attributable to the delay (December 17 to December 29). We therefore conclude that the State met its burden of showing that the delay was the result of Yarbrough's conduct or was otherwise justified and that the circuit court was correct in excluding this twelve-day period from its speedy-trial calculations. After excluding the twelve-day period, the scheduled trial date, which was November 8, 2004, is within 365 days of the date of arrest, which was October 30, 2003.

Therefore, we need not address Yarbrough's challenge to the second period of time excluded by the circuit court.

For his second point on appeal, Yarbrough argues that the circuit court erred in denying his motion to suppress physical evidence seized during the traffic stop. Specifically, Yarbrough asserts that his detention was improper, both under Arkansas case law and the plain language of Rule 3.1 of the Arkansas Rules of Criminal Procedure. In reviewing a circuit court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court and proper deference to the circuit court's findings. *Mann v. State*, 357 Ark. 159, 161 S.W.3d 826 (2004). We reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001).

Based upon our review of the testimony and evidence elicited at the suppression hearing, the sequence of events that culminated in Yarbrough's arrest can be summarized as follows:

- On October 30, 2003, at 9:39 p.m., Sergeant Brian Davis of the Arkansas State Police stopped Yarbrough on Interstate 40 in Crawford County for following another vehicle too closely.

- Sgt. Davis made contact with Yarbrough and his passenger, Norberto Guzman, and Yarbrough promptly acknowledged that he was following another vehicle too closely. The officer asked for and obtained Yarbrough's driver's license and other papers, including his car registration, insurance, and a copy of a car rental agreement. Upon inspecting the paperwork, Sgt. Davis noticed that Guzman was listed as the renter but Yarbrough was not designated as a driver.

- The officer then asked Yarbrough to accompany him to the patrol car. In response to questions about his travel itinerary, Yarbrough explained that he had left Tennessee on October 29 and traveled to Arkansas. At this point, Sgt. Davis was running a check on Yarbrough's driver's license.

- Sgt. Davis told Yarbrough that he was going to write a warning citation for the traffic violation. Yarbrough then disclosed that he and Guzman had come to Arkansas to visit Guzman's sister.

- While talking with Yarbrough at the patrol car, Sgt. Davis examined the rental agreement and noticed that the car had been rented in Knoxville, Tennessee, on October 25, and was due back in Knoxville on October 28; that is, the deadline to return the rental car was two days before the traffic stop on October 30.

- About five minutes into the initial stop, Sgt. Davis walked over to the rental car and asked Guzman about their travels. Guzman indicated that they had been vacationing in California and traveling in Oklahoma, Texas, and Arkansas; but nothing was said about a sister and he could not identify what town in Arkansas they visited.

- Sgt. Davis obtained Guzman's driver's license, and, upon inquiring about the rental agreement, he learned that Yarbrough was driving because Guzman was tired. He also noticed gas receipts in Guzman's wallet that reflected travel as far west as Amarillo, Texas.

- At this point, Sgt. Davis ran a check on Guzman's West Virginia driver's license and observed that both men were physically shaking and "extremely nervous," to the point that he could see the pulses in the carotid arteries located in their necks.

- After advising Yarbrough again that he would receive a warning citation for the traffic offense, Sgt. Davis asked if there was anything illegal in the vehicle. Yarbrough gave a negative response and declined the officer's request to search the vehicle, stating that, because the car was not his, Guzman would have to provide consent.

- Sgt. Davis called for back-up law enforcement and a drug canine.

- Upon being questioned, Guzman also indicated that there was nothing illegal in the vehicle. Sgt. Davis obtained Guzman's consent to search the car and then reviewed a consent-to-search form with him, and Guzman consented a second time.

- When back-up arrived at the scene, Sgt. Davis told the two men that, even though consent had been obtained, he would not conduct the search until the canine arrived.

- Three minutes later, a canine sniff was conducted and the dog alerted to the vehicle.

- It was at this point that Guzman said he had forgotten that there was a little marijuana in the car.

- Marijuana was found in the trunk of the car.

- Yarbrough and Guzman were arrested at approximately 10:10 p.m.

- Later that night, the vehicle was stored at the Alma Police Department where approximately forty-three pounds of marijuana were discovered in the spare-tire well.

- Sgt. Davis did not give Yarbrough a copy of the warning, and Yarbrough's driver's license and other papers were not returned to him until after the marijuana was discovered.

We first observe that Sgt. Davis's initial traffic stop of Yarbrough appears to have been entirely legal. In order for a police officer to make a traffic stop, he must have probable cause to believe that the vehicle has violated a traffic law. *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004). Here, Yarbrough does not challenge the initial traffic stop. Indeed, the record indicates that when the officer confronted him at the scene, Yarbrough admitted that he was following another vehicle too closely.

The next question concerns whether the traffic stop was completed either before Sgt. Davis obtained Guzman's consent to search the vehicle or before the canine sniff was conducted. In *Sims v. State, supra*, this court held that under our criminal rules, once the legitimate purpose of a valid traffic stop is completed, a police officer must have reasonable suspicion that the person is committing, or has committed, or is about to commit a felony or misdemeanor involving danger to persons or property, in order to continue to detain that person. *See* Ark. R. Crim. P. 3.1 (2006). Yarbrough asserts that his detention was improper under our decisions in *Sims v. State, supra*, and *Lilley v. State*, 362 Ark. 436, 208 S.W.3d 785 (2005). We disagree.

This court explained in the *Sims* case that,

> [A]s part of a valid traffic stop, a police officer may detain a traffic offender while the officer completes certain routine tasks, such as computerized checks of the vehicle's registration, the driver's license and criminal history, and the writing up of a citation or warning. During this process, the officer may ask the motorist routine questions such as his destination, the purpose of the trip, or whether the officer may search the vehicle, and he may act on whatever information is volunteered.

356 Ark. at 514, 157 S.W.3d at 535 (internal citations omitted); *see Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001). Once the

purpose of the traffic stop is completed, the officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention. *Sims v. State, supra,* (citing *United States v. Mesa,* 62 F.3d 159 (6th Cir. 1995)).

Here, Sgt. Davis obtained Yarbrough's driver's license and paperwork, including a copy of the car rental agreement. He then proceeded to perform the routine tasks of computerized checks on the driver's license and criminal history. He also asked Yarbrough and Guzman routine questions about their travels. The men gave conflicting accounts, with Yarbrough saying they had been to Fort Smith to see Guzman's sister. Guzman, on the other hand, said nothing about a sister and told Sgt. Davis that they had been vacationing in California. In reviewing the car rental agreement, Sgt. Davis noticed that Guzman, and not Yarbrough, was the designated renter, which information necessarily led the officer to approach Guzman and ask for his driver's license.

During the course of this encounter, Sgt. Davis determined that he was going to give Yarbrough a warning for the traffic violation; but, before doing so, he asked Yarbrough for his consent to search the vehicle. Yarbrough directed the officer to Guzman, whose name was on the rental contract. Guzman consented to the search approximately sixteen (16) minutes after the initial stop. As of the point in time when Guzman gave his consent to the search, Sgt. Davis had neither returned Yarbrough's identification papers to him nor given him a copy of the warning.

In *Lilley v. State, supra,* we viewed the traffic stop as completed after the warning and vehicle documentation were handed to the driver. Likewise, we said in the *Sims* case that the legitimate purpose of the stop had terminated *"after* [the officer] handed Sims back his driver's license and registration, along with a warning for [the traffic offense]." *Sims v. State,* 356 Ark. at 513, 157 S.W.3d at 534. Based on this case law, we cannot say that the circuit court's ruling is clearly against the preponderance of the evidence.

Nonetheless, Yarbrough asserts that the officer had issued the warning before the search took place, thereby "completing the basis of the traffic stop." In support of that assertion, he suggests that there was a discrepancy in the officer's testimony and the report made shortly after the arrest. At the hearing, Sgt. Davis testified that he was in the process of writing the warning before

consent was requested and obtained; whereas, his report contained the following sentence: "I ran a check on his license and issued him a warning for his violation." In rejecting Yarbrough's discrepancy argument, the circuit judge specifically found the officer's testimony at the hearing to be credible. In matters of credibility, it is well settled that this court defers to the circuit judge. *Flanagan v. State*, 368 Ark. 143, 243 S.W.3d 866 (2006).

Yarbrough also suggests that Sgt. Davis's irrelevant line of questioning was in and of itself an unreasonable detention. However, that argument was not made below. This court has repeatedly stated that we will not address arguments, even constitutional arguments, raised for the first time on appeal. *Dowty v. State*, 363 Ark. 1, 210 S.W.3d 850 (2005). In any event, we have clearly held that, as part of a traffic stop, a police officer may ask the motorist routine questions during the process of performing a number of routine tasks related to the traffic violation. *Laime v. State, supra.*

As a final point, Yarbrough asserts that there can never be a proper detention under Ark. R. Crim. P. 3.1 which exceeds fifteen minutes. We disagree. Rule 3.1 provides that an officer "may require the person to remain in or near such place in the officer's presence for a period of time not more than fifteen (15) minutes *or for such time as is reasonable under the circumstances.*" Ark. R. Crim. P. 3.1 (emphasis added). According to the plain language of the rule, the alternative time period of "such time as is reasonable under the circumstances" is not restricted to a specific number of minutes. Any other interpretation would render that language mere surplusage and of no effect. *See generally J & M Mobile Homes, Inc. v. Hampton*, 347 Ark. 126, 60 S.W.3d 481 (2001).

In conclusion, based on our de novo standard of review, we cannot say that the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. As a result, we affirm the circuit court's denial of Yarbrough's motion to suppress.

Circuit Court affirmed; Court of Appeals reversed.