2010 Ark. App. 210

**Johnta Q. BARBER, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–768.**

Court of Appeals of Arkansas.

March 3, 2010.

William Owen James Jr., James Law Firm, Little Rock, for Appellant.

John T. Adams, Assistant Attorney General, Little Rock, for Appellee.

JOHN B. ROBBINS, Judge.

Appellant Johnta Barber was convicted in a jury trial of aggravated robbery, kidnapping, aggravated assault, theft of property, unlawful discharge of a firearm from a vehicle, and fleeing. Mr. Barber was sentenced to a total of fifty-seven years in prison, and he now appeals.

Mr. Barber raises three points for reversal. First, he argues that the trial court erred in denying his motion to suppress his custodial statement on the basis that he was illegally arrested. Next, Mr. Barber contends that there was insufficient evidence to support the verdicts. Finally, he argues that the trial court erred in denying his motion to dismiss for lack of a speedy trial. We affirm.

Due to double-jeopardy concerns, we first are required to address appellant's challenge to the sufficiency of the evidence supporting his convictions. *See Grillot v. State,* 353 Ark. 294, 107 S.W.3d 136 (2003). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Bowker v. State,* 363 Ark. 345, 214 S.W.3d 243 (2005). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* On appeal, we view the evidence in a light most favorable to the State, considering only that evidence that supports the verdict. *Id.*

The State's theory in this case was that Mr. Barber acted in concert with Cornelius Page and James Walker in robbing a bank in Greenbrier on the morning of April 13, 2007. The State presented evidence that Mr. Page and Mr. Walker went inside the bank to get the money, and that Mr. Barber drove the getaway car.

One of the victims was bank employee Jana Crisler. Ms. Crisler arrived at work at about 7:45 a.m. that morning, and a man put a gun to her back and ordered her to open the door. Once inside the bank, Ms. Crisler turned off the alarm. A second man was holding a gun on bank employee Regina Lanfere. The men ordered the bank employees to open the vault, and once inside the vault one of the men began stuffing money into an orange duffel bag. Once he was finished loading the money, the man ordered Ms. Crisler and Ms. Lanfere into the bathroom while holding them at gunpoint. The robber shut the bathroom door leaving the women sitting in the dark, and subsequently the women were ordered to relocate to the vault. A minute later, Ms. Crisler heard a scream and the men put bank employee Stephanie Ungerank into the vault. Ms. Ungerank testified that when she entered the bank, two masked men grabbed her by her hair, beat her head into the floor, and beat her with a gun. Once inside the vault, Ms. Ungerank remained there because she was afraid she would be shot if she moved.

After the three women remained in the vault for a while, bank employee John Simmons entered the bank. Mr. Simmons knew something was wrong because the

lights were off and things were in disarray, and he heard the women crying in the vault. Ms. Ungerank told him to lock the door to the bank, which he did. Then Ms. Ungerank advised Mr. Simmons to call 911, and she gave him a description of the vehicle she had seen in the parking lot. She described it as a maroon car with dark tinted windows, with out-of-state tags, possibly Illinois. When Mr. Simmons made the emergency call, he advised that Ms. Ungerank was certain that the tags were out-of-state.

Officer Dusty Kirkpatrick received information that morning to be on the lookout for a car matching the description provided. He observed a maroon car with dark tinted windows, with a Missouri license plate, traveling southbound on Highway 65 about a mile from Conway. The suspect car proceeded onto Interstate 40 eastbound, and Officer Kirkpatrick followed, never losing sight of the vehicle. Officer Greg Bray was patrolling eastbound traffic between Conway and Mayflower, and he joined the chase and initiated his blue lights.

Officer Bray testified that after he turned on his blue lights, the maroon car sped up to one hundred miles per hour. The car was passing vehicles on the left shoulder and struck an SUV being driven by Thomas Nabholz, causing the SUV to flip and resulting in injuries to Mr. Nabholz. The suspect car took the Mayflower exit, speeding through town at eighty miles per hour and turning southbound on Highway 365.

During the chase, one of the suspect car's tires went flat and it continued at high speeds on the rim. Six shots were fired out of the back glass on the passenger's side of the car in the direction of Officer Bray's patrol unit. The car eventually came to a stop at White City Road,

where the three suspects emerged from the vehicle.

All of the suspects attempted to flee, but with the help of numerous police officers on the scene, Mr. Page and Mr. Walker were immediately apprehended. However, the driver of the car escaped into the woods. The driver was described as a black man wearing a brown jacket, and either pants or long shorts that were dark in color. Upon processing the scene, investigators found large sums of money in the car, on the apprehended suspects, and in the vicinity, which totaled more than $100,000. A handgun and orange duffel bag were found inside the car. It was discovered that there was a Florida license plate underneath the Missouri license plate, and that the car had been rented from Florida.

After the getaway driver escaped into the woods, there was a large-scale manhunt with fifty police officers, helicopters, and canines in pursuit. The search lasted about eight hours and was aided by a nearby citizen, Pam Fuller, who lives off of White City Road. Ms. Fuller noticed that there were a lot of police at the church by her house, and she dialed 911 and advised that she thought she saw the man they were looking for in her back yard. Ms. Fuller testified that the man was in a wooded area that was not an area where people go into, and that he was covered in mud and shivering.

Based on the information provided by Ms. Fuller, the police made contact with the suspect, who was later identified as Mr. Barber. Officer Jason Aaron found Mr. Barber lying face down in some mud and leaves, and Mr. Barber did not obey the officer's commands. Officer Aaron kneeled down on Mr. Barber's back and handcuffed him. Appellant was taken into custody, and he was found to be carrying a Florida identification card. Mr. Barber

was wearing a muscle shirt and long shorts, and a muddy brown jacket was found about five feet from where he was apprehended. He was apprehended a few hundred yards from where the maroon car had come to rest.

After Mr. Barber was arrested and taken to the police station, Officer Doug Estes informed him of his *Miranda* rights and Mr. Barber agreed to give a statement. During the interview, Mr. Barber said that he lived in Orlando, Florida. When asked about his arrest, Mr. Barber stated that he was a transient walking in the woods, and he had a seizure and went to sleep. He claimed ignorance of any criminal activity. Officer Estes inquired as to how he got in the woods and asked, "Did you fall out of a spaceship?" Mr. Barber responded, "Yeah, that's what happened. I want to talk to my lawyer."

In this appeal, we first address Mr. Barber's arguments pertaining to the sufficiency of the evidence. Mr. Barber challenges each of his six convictions on the basis that none were supported by substantial evidence.

In his brief, Mr. Barber challenges his convictions for aggravated robbery, kidnapping, and theft of property together. Arkansas Code Annotated section 5–12–103(a)(1) (Repl.2006) provides that a person commits aggravated robbery if he commits robbery and is armed with a deadly weapon. A person commits kidnapping if, without consent, the person restrains another person so as to substantially interfere with the other person's liberty with the purpose of facilitating the commission of any felony or flight after the felony. Ark.Code Ann. § 5–11–102(a)(3) (Repl.2006). A person commits theft of property if he knowingly takes or exercises unlawful control over the property of another person with the purpose of depriv-

ing the owner of the property. Ark.Code Ann. § 5–36–103(a)(*l*) (Repl.2006).

In challenging the sufficiency of the evidence to support the above three convictions, Mr. Barber notes that none of the bank employees could identify any of the perpetrators. He further asserts that there was an absence of evidence that he entered the bank. While the State theorized that since Mr. Barber was the black male who was found in the vicinity of the maroon car, he was associated with the crimes, Mr. Barber posits that there was no evidence showing that he had any relationship to the events associated with the bank robbery. Because of a lack of evidence connecting him to the actions that occurred at the bank, Mr. Barber argues that his convictions for aggravated robbery, kidnapping, and theft of property must be reversed.

A person commits unlawful discharge of a firearm from a vehicle if he recklessly discharges a firearm from a vehicle in a manner that creates a substantial risk of physical injury to another person. Ark. Code Ann. § 5–74–107(b)(1) (Repl.2005). Mr. Barber challenges the sufficiency of the evidence to support that conviction on the basis that there was no evidence that he discharged a firearm from a vehicle or was even in a vehicle involved in the chase. Mr. Barber notes that the shots were fired through the rear window from the passenger's side, that both Mr. Page and Mr. Walker tested positive for gunshot residue, and that Officer Bray testified that Mr. Barber was not the shooter.

Finally, Mr. Barber challenges the sufficiency of the evidence on his aggravated assault and fleeing convictions. Under Ark.Code Ann. § 5–13–204(a)(*l*) (Repl. 2006), a person commits aggravated assault if, under circumstances manifesting extreme indifference to human life, he purposely engages in a conduct that creates a

substantial danger of death or serious physical injury to another person. The fleeing statute, Ark.Code Ann. § 5–54–125 (Repl.2005), prohibits fleeing if a person knows his immediate arrest or detention is being attempted by a duly authorized law enforcement officer. Mr. Barber contends that each of these convictions must be reversed because there was no evidence that he was the driver of the fleeing vehicle that caused the accident with the SUV being driven by Mr. Nabholz.

We hold that there was substantial evidence to support each of appellant's convictions. Pursuant to Ark.Code Ann. § 5–2–402(2) (Repl.2006), a person is criminally liable for the conduct of another person if the person is an accomplice of another person in the commission of an offense. A person is an accomplice if, with the purpose of promoting or facilitating the commission of an offense, the person aids, agrees to aid, or attempts to aid the other person in planning or committing the offense. Ark.Code Ann. § 5–2–403(a)(2) (Repl.2006). In the present case, appellant was charged with committing crimes while acting in concert with two or more persons, and the theory of accomplice liability was implicated by the State's evidence. The jury was instructed on accomplice liability without objection. In *Wilson v. State*, 365 Ark. 664, 666–67, 232 S.W.3d 455, 458 (2006), our supreme court wrote:

> We have said that there is no distinction between principals on the one hand and accomplices on the other, insofar as criminal liability is concerned. *Jefferson v. State*, 359 Ark. 454, 198 S.W.3d 527 (2004). When two people assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Cook v. State*, 350 Ark. 398, 86 S.W.3d 916 (2002). One cannot disclaim accomplice liability simply because he did not personally take part in every act that went to make up the crime as a whole. *Id.*

While the State did not prove that Mr. Barber actually entered the bank, it did provide substantial evidence that Mr. Barber was the driver of the getaway car, and thus was an accomplice of the two men who committed the aggravated robbery, kidnapping, and theft of property. And while Mr. Barber did not personally shoot at Officer Bray's vehicle, his conduct of driving the fleeing vehicle while another person in the car fired the shots sufficiently implicated him as an accomplice to unlawfully discharging a firearm from a vehicle.

Although Mr. Barber argues that there was insufficient evidence that he was the driver of the maroon car, we disagree. The evidence viewed in the light most favorable to the State showed that after the maroon car became disabled, two of the suspects were apprehended with large sums of money but the driver ran into the woods. A massive manhunt ensued, and based on a tip from a nearby citizen Mr. Barber was located face down, covered in mud, in a wooded location where people had no reason to be. Mr. Barber was unresponsive to the officer's commands, and it was later determined that he was from Florida, where the getaway car had been rented. Just five feet from where he was apprehended, a brown jacket was found, which the driver had been identified as wearing when he fled from the vehicle. Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Simmons v. State*, 2009 Ark. App. 705, 2009 WL 3460715. In the present case, there was circumstantial evidence that Mr. Barber knowingly participated in the criminal activity by driving the getaway car, and thus there was substantial

evidence of his accomplice liability for aggravated robbery, kidnapping, theft of property, and unlawful discharge of a firearm from a vehicle.

As for his aggravated assault and fleeing convictions, there was substantial evidence to convict Mr. Barber as a principal. As we previously indicated, there was substantial evidence that he was driving the maroon car. After Officer Bray turned on his blue lights, Mr. Barber accelerated to a speed of one hundred miles per hour and struck an SUV, causing it to flip and resulting in injuries to the driver. This conduct sufficiently satisfied the elements of aggravated assault and fleeing.

We next turn to Mr. Barber's argument that the trial court erred in denying his motion to suppress his custodial statement on the basis that it was obtained as a result of an illegal arrest. Mr. Barber cites *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), where the Supreme Court held that the "fruit of the poisonous tree" doctrine provides that evidence obtained by the exploitation of a primary illegality must be excluded. Mr. Barber asserts that because the police had no reasonable cause to believe he had committed a felony, his arrest was unlawful and his custodial statement was the fruit of the poisonous tree.

Arkansas Rule of Criminal Procedure 4.1(a)(i) provides that a law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed a felony. In the case at bar, Mr. Barber argues that reasonable cause was lacking because at the time of his arrest there was no direct evidence that he had committed a robbery. Other than the fact that he was a black male found a few hundred yards from where the maroon car had stopped, appellant submits that there was no evidence that he had committed any of the offenses. Mr. Barber was not arrested until eight hours after the chase ended, and he did not possess any of the money stolen from the bank. Under these circumstances, appellant maintains that the officers lacked evidence to support their suspicion that he was the third occupant of the vehicle, and that any statements he made to the police subsequent to his arrest should have been suppressed.

Reasonable cause to arrest without a warrant does not require the degree of proof sufficient to sustain a conviction. *McKenzie v. State,* 69 Ark.App. 186, 12 S.W.3d 250 (2000). Reasonable, or probable, cause for a warrantless arrest exists when the facts and circumstances within an officer's knowledge are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person to be arrested. *Id.* In assessing the existence of reasonable cause, the appellate court's review is liberal rather than strict. *Id.* In reviewing a suppression challenge, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State,* 351 Ark. 406, 94 S.W.3d 892 (2003).

We hold that the trial court did not err in concluding that the police officers had reasonable cause to arrest Mr. Barber without a warrant. The police were given information that a black man covered in mud and shivering was in a wooded area where people normally did not go. Upon investigating, the police found Mr. Barber lying face down in mud and leaves, lying motionless and ignoring directives from the police. He was wear-

ing long shorts, and five feet away was a brown jacket covered in mud. These items of clothing matched the description of those worn by the driver who had escaped into the woods. These facts and circumstances gave the officers reasonable cause to believe that Mr. Barber was the escaped driver who had engaged in multiple felonies earlier that day. Therefore, the trial court committed no error in denying appellant's motion to suppress.

Mr. Barber's remaining argument is that the trial court erred in denying his motion to dismiss on the basis that he was denied a speedy trial. Arkansas Rule of Criminal Procedure 28 governs speedy trial. Any defendant charged in circuit court shall have the charge dismissed with an absolute bar to prosecution if not brought to trial within twelve months of the date of arrest. *See* Ark. R.Crim. P. 28.1(c) and 28.2(a). Certain periods of time are excluded in computing the time for trial. *See* Ark. R.Crim. P. 28.3.

In this case, Mr. Barber was arrested on April 13, 2007. He was not brought to trial until January 6, 2009. Mr. Barber concedes that there was an excludable period for purposes of calculating the time for speedy trial. In particular, an order was entered granting Mr. Barber's motion for severance on April 15, 2008, and that order specifically stated that the time between the order and the trial date was charged against Mr. Barber for purposes of speedy trial. However, Mr. Barber argues that there were no other excludable periods. Because he was arrested on April 13, 2007, and the severance order was entered more than one year later on April 15, 2008, Mr. Barber contends that his right to a speedy trial was violated and that his convictions must be reversed and dismissed.

■ The appellate court reviews the excludability periods of time for speedy-trial calculation de novo. *Cherry v. State,* 347 Ark. 606, 66 S.W.3d 605 (2002). Once a defendant demonstrates a prima facie case of a speedy-trial violation, specifically, that the trial will be held beyond the twelve-month speedy-trial period, the burden is on the State to show that the delay was the result of the defendant's conduct or was otherwise justified. *Id.* In the instant case, Mr. Barber made a prima facie case of a speedy-trial violation, but the State has met its burden of identifying an additional time period charged against the defendant that put his trial within the required twelve-month period.

■ Rule 28.3(a) provides that the following periods shall be excluded in computing the time for trial:

The period of delay resulting from other proceedings concerning the defendant, including but not limited to an examination and hearing on the competency of the defendant and the period during which he is incompetent to stand trial, hearings on pretrial motions, interlocutory appeals, and trials of other charges against the defendant. No pretrial motion shall be held under advisement for more than thirty (30) days, and the period of time in excess of thirty (30) days during which any such motion is held under advisement shall not be considered an excluded period.

The excludable period contemplated by this rule begins at the time the pretrial motion was made and includes those portions of delay attributable to the defendant until the motion is heard by the court and not more than thirty days thereafter. *Ferguson v. State,* 343 Ark. 159, 33 S.W.3d 115 (2000).

■ Mr. Barber's trial was originally scheduled for August 6, 2007, with a pretrial hearing set for July 13, 2007. On July 11, 2007, Mr. Barber filed his motion

to suppress statement and also a motion to suppress physical evidence. By an order of continuance dated July 13, 2007, the trial court rescheduled the pretrial hearing for October 12, 2007, and rescheduled the trial for October 29, 2007. In accordance with Rule 28.3(a), the continuance order specifically charged the time between the order and the scheduled trial against Mr. Barber. Mr. Barber did not object to that period being charged against him, and a contemporaneous objection to an excluded period is necessary to preserve the argument in a subsequent speedy-trial motion. *See Ferguson, supra.* The delay was properly charged against appellant, he made no objection, and that excludable period put his trial within twelve months of his arrest as calculated under Rule 28. Therefore, appellant was afforded a speedy trial, and the trial court properly denied his motion to dismiss.

Affirmed.

GLOVER and MARSHALL, JJ., agree.