SLIP OPINION


# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR–15–234

| | | |
|---|---|---|
| CALVIN TATUM | | **Opinion Delivered** February 10, 2016 |
| | APPELLANT | |
| | | APPEAL FROM THE MONROE |
| V. | | COUNTY CIRCUIT COURT |
| | | [NO. CR–2013–38] |
| | | |
| STATE OF ARKANSAS | | HONORABLE RICHARD L. |
| | APPELLEE | PROCTOR, JUDGE |
| | | |
| | | AFFIRMED |

## BART F. VIRDEN, Judge

A Monroe County jury convicted appellant Calvin Tatum of rape and sentenced him to serve ten years in prison. He raises two arguments on appeal: (1) the conviction is not supported by substantial evidence "on the record as a whole," and (2) the trial court erred in denying his motions to dismiss on speedy-trial grounds. We affirm.

### I. *Sufficiency of the Evidence*

A person commits rape if he engages in sexual intercourse or deviate sexual activity with another person by forcible compulsion. Ark. Code Ann. § 5–14–103(a)(1) (Supp. 2011). "Deviate sexual activity" means any act of sexual gratification involving the penetration, however slight, of the anus or mouth of a person by the penis of another person. Ark. Code Ann. § 5–14–101(1)(A) (Supp. 2011). "Forcible compulsion" means physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person. Ark. Code Ann. § 5–14–101(2).



A. Trial Testimony

D.H. (DOB: 6-23-98) testified that in October and November 2012, he was living with his mother, Martha Wineberry, at the Heritage Inn in Brinkley. He testified that Wineberry was in a romantic relationship with Doyle Stinnett. D.H. claimed that he had overheard a conversation between Stinnett and Tatum, with whom he was only casually acquainted, about selling him (D.H.) to Tatum to repay a debt. D.H. said that the following day, Stinnett had taken him to Tatum's room and had left him. D.H. testified that Tatum had asked him to pull his pants down; that he had felt threatened and had felt as though he had no choice but to comply; and that Tatum had "put his penis in [D.H.'s] butt." D.H. testified that he had expressed to Tatum that he did not want to do what was asked of him. D.H. stated that he did not tell anyone afterward because he was afraid that his mother would "act stupid." Eventually, D.H. told a police officer whom he trusted. Police showed D.H. a photo lineup. D.H. testified that the pictures were blurry but that he had identified Tatum, saying "I think that's him." D.H. admitted that he had previously lied to police about drugs and guns. D.H. insisted, however, that he was telling the truth about Tatum, that he had never changed his story, and that he had no reason to lie about Tatum. When recalled to the stand by defense counsel, D.H. testified that he "wasn't 100% sure" that it was Tatum he had identified in the lineup. D.H. stated that, regardless of the photos, he had no doubt that Tatum was the man who had raped him.

Tatum testified that during the first part of October 2012 he had been incarcerated, that he had stayed at a repair shop on Highway 216 the rest of that month, and that he had

stayed with his mother in Smackover in November and December 2012. Tatum admitted having stayed at the Heritage Inn on February 20 and 22, 2013. Tatum stated that "quite a few" black men had stayed at the motel, that a few of them were built like him, and that D.H. had confused him with someone else. Tatum claimed that, in any event, D.H. was motivated to lie to get himself out of trouble.

## B. Argument and Discussion

Tatum concedes that the testimony of an alleged victim may be substantial evidence of rape but argues that there is an exception when the testimony is "inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon," citing *Rohrbach v. State*, 374 Ark. 271, 274, 287 S.W.3d 590, 593 (2008). He argues that "some attention is paid to the record as a whole or such exception would not exist." Tatum maintains that, in the interest of fair play and due process, this court should at least review the entire record. "To allow [D.H.] to testify without corroboration in light of all the lies that he [had admittedly] told [put] the jury [at] a serious disadvantage in determining guilt or innocence in this case."

We decline to address Tatum's challenge to the sufficiency of the evidence due to the lack of specificity in his directed-verdict motions. Following the State's case, defense counsel moved for a directed verdict, saying, "[The] State has failed to meet the burden of their case. The young man said that the rape didn't happen." When defense counsel renewed his directed-verdict motion at the close of all the evidence, he said, "Your Honor, based on the evidence we heard, the State has failed to meet their burden of proof. Based on the testimony

from [D.H.] and my client, I move for directed verdict."

Rule 33.1(a) of the Arkansas Rules of Criminal Procedure provides that in a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all the evidence. A motion for directed verdict shall state the specific grounds therefor. Ark. R. Crim. P. 33.1(a). Rule 33.1(c) further provides that

> the failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense.

To the extent that Tatum did raise a credibility issue, we would nevertheless affirm because a rape victim's testimony alone may constitute substantial evidence to sustain a conviction. *Goodman v. State*, 2009 Ark. App. 262, 306 S.W.3d 443. The rape victim's testimony need not be corroborated, nor is scientific evidence required, and the victim's testimony describing penetration is enough for a conviction. *Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008). Here, D.H. offered specific testimony in that regard. Moreover, Tatum was permitted to cross-examine D.H. about his previous lies, yet the jury believed D.H.'s testimony about the rape and disbelieved Tatum's denials and conflicting testimony.[1]

Our standard of review is well settled: Evidence is substantial if, *when viewed in the light most*

---

[1] Matters such as evaluating a witness's credibility and resolving inconsistencies in the evidence are issues for the jury and not the court. *Phillips v. State*, 344 Ark. 453, 40 S.W.3d 778 (2001).

*favorable to the State*, it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id*. (emphasis added). Therefore, if we had reached the merits, we would have held that there was substantial evidence to support the jury's verdict.

## II. *Speedy-Trial Motions*

### A. Burden and Standard of Review

Any defendant charged in circuit court shall have the charge dismissed with an absolute bar to prosecution if not brought to trial within twelve months of the date of arrest. *See* Ark. R. Crim. P. 28.1(c) and 28.2(a). Certain periods of time are excluded in computing the time for trial. *See* Ark. R. Crim. P. 28.3. Once a defendant demonstrates a prima facie case of a speedy-trial violation, specifically, that the trial will be held beyond the twelve-month speedy-trial period, the burden is on the State to show that the delay was the result of the defendant's conduct or was otherwise justified. *Barber v. State*, 2010 Ark. App. 210, 374 S.W.3d 709. The appellate court reviews the excludable periods of time for speedy-trial calculation de novo. *Id*.

### B. Argument and Discussion

Tatum concedes that the period from August 23, 2013, to January 27, 2014, representing a continuance granted at the request of defense counsel, is excluded from the speedy-trial calculation. He argues, however, that the State produced no evidence that other delays were caused by him and asserts that the record is not clear concerning other allegedly excluded periods. Tatum maintains that, excluding the one period above, he was tried 425

days after his arrest, which violates the speedy-trial rule.

Tatum was arrested on February 25, 2013, and his trial was held on September 30, 2014. Tatum filed two motions to dismiss on speedy-trial grounds,[2] which tolled the running of the time for a speedy trial. *See Yarbrough v. State*, 370 Ark. 31, 257 S.W.3d 50 (2007); *see also Gwin v. State*, 340 Ark. 302, 306, 9 S.W.3d 501, 504 (2000) (noting that the excluded period contemplated by the rule begins at the time the pretrial motion is made and includes those periods of delay attributable to the defendant until the motion is heard by the court and not more than thirty days thereafter). Tatum filed his first motion to dismiss on April 17, 2014, at which point 416 days had passed since the date of his arrest. Thus, Tatum proved a prima facie case of a speedy-trial violation. Tatum's motion to dismiss was denied on April 22, 2014, and the clock commenced to run again. From April 22, 2014, to July 28, 2014, when Tatum filed a second motion to dismiss, ninety-seven days had elapsed. Adding those days to the speedy-trial calculation resulted in a total of 513 days between his arrest and the filing of the second motion. The second motion was denied on September 19, 2014, and Tatum was tried on September 30, 2014, meaning eleven days were added to the speedy-trial calculation. There was a total of 524 days between Tatum's arrest and his trial date, excluding those periods of time surrounding his filing of motions to dismiss. In addition, the period that Tatum concedes should be counted against him amounts to approximately 157 days.

---

[2]Tatum's two motions to dismiss were identical and did not challenge any particular excluded periods. The only specificity in the motions was his assertions that he was charged by felony information on April 1, 2013; that his first judicial appearance was on February 27, 2013; and that "the time has been more than twelve months."

Excluding that period, Tatum was tried within 367 days.

On September 19, 2014, the trial court held a hearing on Tatum's second motion to dismiss for lack of a speedy trial. The trial court said that it had already ruled that the period from April 22, 2013, to July 29, 2013, was excluded. A docket entry on April 22, 2013, reflects the notation "Time delay not charged to State." In a colloquy at the September 19, 2014 hearing, it was said

COURT: So the question is between the time of 4/22[/2013], when the Monroe County Public Defender's Office was to appoint conflict counsel and 7/29[/2013] when Attorney Guynn was present, whether that would count against or for speedy trial.

The Court did make a notation at that time that that time delay would not be charged to the State.

And I think I've already ruled on that once, haven't I?

PROSECUTOR: You have, Your Honor. We had a hearing on that last spring, maybe?

COURT: Um–hum. And I ruled that that was not to be charged to the State. And so the Court sees no reason to change its ruling.

And the way my calculations are, and they may be off a few days, but three-hundred-and-eighteen (318) have run.

PROSECUTOR: Even if we're off slightly, we're still within a year.

COURT: Mr. Guynn, do you have enough in the record for your purposes, now?

DEFENSE COUNSEL: Yes, sir.

COURT: Okay. Then the—I didn't know if you wanted to make any more argument —

DEFENSE COUNSEL: The first time, yeah, the first time we didn't elaborate on the

amount of days. On the first time I filed the motion. But we do now, Your Honor.

COURT: Um-hum. I just wanted to know if you had enough for your appeal, if you needed to do that, okay? Because the Court is going to deny the speedy trial motion.

A contemporaneous objection to an excluded period is necessary to preserve the argument in a subsequent speedy-trial motion. *Gondolfi v. State*, 352 Ark. 158, 98 S.W.3d 812 (2003). The reason for requiring a contemporaneous objection is to inform the trial court of the reason for a disagreement with its proposed action prior to making its decision or at the time the ruling occurs. *DeAsis v. State*, 360 Ark. 286, 200 S.W.3d 911 (2005). The idea is to give the trial court the opportunity to fashion a different remedy. *Id*. Although Tatum was represented by different counsel when the ruling was originally made, when the matter was raised again at the September 19, 2014 hearing, trial counsel failed to object and hold the State to its proof. Excluding what amounted to approximately ninety-eight days between April 22, 2013, and July 29, 2013,[3] Tatum was tried within approximately 269 days. Accordingly, we hold that there was no speedy-trial violation.

Affirmed.

KINARD and GLOVER, JJ., agree.

*David O. Bowden*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Ass't Att'y Gen., and *Rafael Gallaher*, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of the Supreme Court under the Supervision of *Darnisa Evans Johnson*, for appellee.

---

[3]This court is not saying that these are the only excluded periods, but addressing the ones above puts Tatum well within the time for a speedy trial.