**Larry D. BEALE, Director, Special Fund, Movant,**

v.

**Monie D. STRATTON, Curtis 1000, Inc., Michael D. Long, United Catalysts, Inc., and Workers' Compensation Board, Respondents.**

**Monie D. STRATTON, Cross–Movant,**

v.

**CURTIS 1000, INC., Larry D. Beale, Director, Special Fund, and Workers' Compensation Board, Cross–Respondents.**

**Nos. 88–SC–643–DG, 88–SC–969–DG.**

Supreme Court of Kentucky.

Nov. 9, 1989.

David Randall Allen, Louisville, for movant and cross-respondent, Sp. Fund.

Armer H. Mahan, Jr., Louisville, for respondent and cross-movant, Monie D. Stratton.

William G. Lehnig, Louisville, for respondent and cross-respondent, Curtis 1000, Inc.

Charles E. (Ched) Jennings, Triplett, Underhill, Jennings & Ackerson, Louisville, for respondent, Michael D. Long.

Mary Ann Main and A. Michelle Turner, Wyatt, Tarrant & Combs, Louisville, for respondent, United Catalysts, Inc.

GANT, Justice.

These cases come to us on discretionary review from the Court of Appeals and that

court's holding that the deletion of certain language from KRS 342.120(5) had the effect of requiring the Special Fund to compensate the employee for prior active disabilities. We disagree, and reverse.

Monie D. Stratton was employed by Curtis 1000. In 1969, she received a non-work-related back injury while mopping the floors in her home, which injury required a spinal fusion. She returned to work after this operation and in 1974 received a work injury in which her right thumb and three fingers were amputated, three of the fingers being successfully reattached. As a result of that injury, Stratton received a Workers' Compensation award of 45.25%, which was paid in a lump sum of $28,990.92.

After again returning to work, in 1983 she sustained a second injury to her back, which set this case into action. On motion of the employer, the claims were consolidated, and all parties agreed that the Board was bound to follow the steps required by *Young v. Fulkerson,* Ky., 463 S.W.2d 118 (1971).

After the taking of proof, the Board found that Stratton had sustained an occupational disability which rendered her 100% permanently disabled. Seventy per cent of this disability was ascribed to a pre-existing active disability and not compensable. The remaining 30% was assigned 15% to the employer and 15% to the Special Fund.

In August, 1984, Michael D. Long suffered a work-related injury to both knees, which the Board determined rendered him 50% occupationally disabled. In its apportionment, the Board found that 25% of the disability was an active disability which existed before the injury as the result of a previous non-work-related injury and surgeries, and held this non-compensable. The remaining percentages were assigned 10% to the employer and 15% to the Special Fund.

The question before us, as stated, is whether the 1982 amendments to KRS Chapter 342 required the Special Fund to pay the employee for prior active disabilities. Prior to said amendments, KRS 342.-120 in the section pertaining to the Special Fund, provided:

> The remaining compensation for which such resulting condition would entitle the employee, including any compensation for disability resulting from a dormant disease or condition aroused into disabling reality by the injury or occupational disease, *but excluding all compensation which the provisions of this chapter would have afforded on account of prior disabling disease or injury had it been compensated thereunder,* shall be paid out of the Special Fund ...

In addition to other amendments to KRS Chapter 342, the underlined portion above was deleted. The Court of Appeals construed this deletion to mean that the Special Fund must compensate the employee for any previous active disability, in addition to disability resulting from a dormant disease or condition aroused into disabling reality or occupational disease.

The history of Workers' Compensation in Kentucky has been one of constant change by the legislature and constant interpretation by the courts. As called to our attention by the Special Fund, the case of *Yocom v. Jackson,* Ky.App., 554 S.W.2d 891 (1977), contains an excellent discourse on the concept of liability by the Special Fund. An examination of the history and purpose of the Special Fund, however, reveals that, to this date, "pre-existing active disability" has never been compensated in Kentucky.

The phrase "active disability" is largely a judicial concept, and has never appeared in the statutes. *See Wells v. Bunch,* Ky., 692 S.W.2d 806 (1985). Although *Transport Motors Express, Inc. v. Finn,* Ky., 574 S.W.2d 277 (1978), utilized the deleted exclusionary language in reaching the result therein, that was only a part of the picture, and we note that the deleted portion does not utilize the phrase "pre-existing active disability."

KRS 342.120, as adopted in 1982, reads as follows:

> 342.120. Creation of division of special fund—Subsequent injury compensation—Special fund as a party.—(1) There is created the division of the spe-

cial fund in the department of labor which shall be responsible for the administration of the legal representation of the fund and the maintenance of records regarding the payment of claims by the fund.

(2) A claimant may in the original application for benefits, or either party may by motion while the case is pending, accompanied by proper allegations and by certification of the fact that a copy of the motion and the entire case file has been forwarded to the special fund at the cost of the movant, request the board to and the board shall, or upon its own motion the board may, at any time before the rendition of the final award, cause the special fund to be made a party to the proceedings if either or both of the following appears:

(a) the employe is disabled, whether from a compensable injury, occupational disease, pre-existing disease, or otherwise, and has received a subsequent compensable injury by accident, or has developed an occupational disease;

(b) The employe is found to have a dormant non-disabling disease or condition which was aroused or brought into disabling reality by reason of a subsequent compensable injury by accident or an occupational disease.

(3) When the special fund has been made a party the board may direct the procedures provided in KRS 342.121.

(4) If it is found that the employe is a person mentioned in paragraphs (a) or (b) of subsection (2) of this section and a subsequent compensable injury or occupational disease has resulted in additional permanent disability so that the degree of disability caused by the combined disabilities is greater than that which would have resulted from the subsequent injury or occupational disease alone, and the employe is entitled to receive compensation on the basis of the combined disabilities, the employer shall be liable for the payment of all income benefits until the benefits paid have reached a percentage of the full income benefits awarded by the board which is equal to the percentage of disability which would

have resulted from the latter injury or occupational disease had there been no pre-existing disability or dormant, but aroused, disease or condition.

(5) The remaining compensation for which such resulting condition would entitle the employe, including any compensation for disability resulting from a dormant disease or condition aroused into disabling reality by the injury or occupational disease, shall be paid out of the special fund provided for in KRS 342.122. Such remaining compensation shall be paid directly to the employe under such regulations as the secretary of finance may provide for such purpose.

■ It is our opinion that the liability of the Special Fund created by Paragraph (5) in its use of "The remaining compensation for ... resulting condition ..." refers only to disability caused by the second or present injury, excess disability, and disability due to the arousal of a pre-existing dormant disease or condition. The Special Fund is not by any language in this statute required to compensate the employee for a pre-existing active disability. As pointed out by the Special Fund, to hold otherwise could require the Special Fund to compensate an employee for a pre-existing disability for which he had already collected from a tortfeasor or employer, or for an injury barred by the Statute of Limitations, etc.

In the *Stratton* case herein, many pages were devoted to discussion by the respondent and cross-movant, Monie D. Stratton, of the 45.25% previous award made by the Workers' Compensation Board, speculating that the Workers' Compensation Board must have included this figure in arriving at the 70% it assigned to the pre-existing active disability. In reading the evidence presented to the Workers' Compensation Board, we do not find this to be a fact. All the evidence from the two orthopedic surgeons and the neurosurgeon related to the previous condition of the back injury, which was non-work-related. Two of the doctors opined that all the problems of the employee related to the pre-existing back disability, and, indeed, Dr. Mitchell, her treating physician, was specifically asked and stated

the injury to her hand was not included in the figure he ascribed to the pre-existing disability.

■ There was ample evidence to support the Board's finding of 70% pre-existing active non-compensable disability to the back. It is obvious that the hand is a different part of the body and was not, and could not be, considered in the award.

The opinion of the Court of Appeals in both cases is reversed, and these cases are remanded to the Workers' Compensation Board with directions that the Opinion and Award be reinstated.

STEPHENS, C.J., and LAMBERT, VANCE and WINTERSHEIMER, JJ., concur.

COMBS and LEIBSON, JJ., dissent.

LEIBSON, J., files a separate dissenting opinion in which COMBS, J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The purpose of the Special Fund, which is established and controlled by Section 342.120 of the Workers' Compensation Law, is to pay benefits when "the employe is entitled to receive compensation on the basis of ... combined disabilities" that include both preexisting disability as set out in subsection (2), and "a subsequent compensable injury or occupational disease [which] has resulted in additional permanent disability so that the degree of disability caused by the combined disabilities is greater than that which would have resulted from the subsequent injury or occupational disease alone." KRS 342.120(4).

The 1982 Amendments to the Special Fund section made *two* important changes in the nature of the Fund's liability.

The first change is in the method of payment, from a percentage apportionment of the weekly payments between the employer and the Special Fund to a new system where "the employer shall be liable for the payment of all income benefits until the benefits paid have reached a percentage of the full income benefits awarded ... which is equal to the percentage of disability which would have resulted from the latter ["subsequent"] injury" alone. KRS 342.-120(4). Henceforth, the Special Fund shall commence making payments only after the employer's liability for payments has been exhausted.

The second change was to *delete* from the paragraph defining the Special Fund's liability the exclusion formerly in the statute for "all compensation which the provisions of this chapter would have afforded on account of prior disabling disease or injury had it been compensated thereunder."

The first change was obviously intended to benefit the Special Fund by postponing the commencement date for payment of its liability. The Fund could retain and invest the money required by the award until a future date when the employer's liability was exhausted. The second change, just as obviously, was intended to benefit the employee by removing an exclusion that previously limited the Special Fund's monetary liability. By removing this limitation it increased benefits in those cases to which the exclusion formerly applied.

Our Court has recognized and applied the change beneficial to the Special Fund, but it has turned inexplicably blind to the change in the law intended to benefit the employee. We elect to disregard the plain language of the statute, to assume that the General Assembly does not mean what it says when it changes the law to benefit the injured employee.

We do this in circumstances where the plain meaning of the statute is beyond a reasonable doubt. The full text of KRS 342.120(4) now states:

"(4) If it is found that *the employe is a person mentioned in paragraphs (a) or (b) of subsection (2) of this section and a subsequent compensable injury or occupation disease has resulted in additional permanent disability* so that the degree of disability caused by the combined disabilities is greater than that which would have resulted from the subsequent injury or occupational disease

alone, and the employe is entitled to receive compensation on the basis of the combined disabilities, the employer shall be liable for the payment of all income benefits until the benefits paid have reached a percentage of the full income benefits awarded by the administrative law judge which is equal to the percentage of disability which would have resulted from the latter injury or occupational disease had there been no *pre-existing disability or dormant, but aroused disease or condition.*" [Emphasis added.]

Subsection (5) then provides "the remaining compensation for which such resulting condition would entitle the employe ... shall be paid out of the special fund."

The *first* portion of the sentence in subsection (4), as underlined, refers back to both "paragraphs (a) or (b) of subsection (2)." So does the last portion, as underlined. (a) and (b) of subsection (2) cover not only the employee with preexisting "dormant" disability, i.e., the arousal situation in (2)(b), but also in subsection (2)(a) the employee with preexisting active disability: "[t]he employe [who] is disabled, whether from a compensable injury, occupational disease, pre-existing disease, *or otherwise*" when that employee then receives "a subsequent compensable injury." [Emphasis added.] The only reasonable meaning of the words "or otherwise" is to cover preexisting disability from whatever source, whether work related or not, when that employee receives "a subsequent compensable injury." KRS 342.120(2)(a).

The descriptions of preexisting liability in KRS 342.120(2)(a) and (b) existed when the law was amended in 1982 to delete the exclusion which is presently at issue. It beggars common sense to assume that the General Assembly did not intentionally delete the exclusion in former (4), now (5), that formerly relieved the Special Fund from liability in cases of preexisting active disability. They deleted the word that created the exclusion.

The decision in this case is a flagrant departure from two of our rules for interpreting statutes; the one that requires statutes to be applied as written, i.e., according to their plain meaning, and the one that applies specifically to Workers' Compensation statutes, i.e., such statutes should be construed to benefit the employee, which is the purpose of the Act, if there is any ambiguity in the law.

My view of how Section 342.120 should be interpreted is reenforced by reference to KRS 342.730(2), which completes this portion of the statutory scheme. Section 342.-730, which covers computation and payment of weekly disability to the injured employee, both for "total disability" and for "permanent, partial disability," is now the *only* statute providing any language qualifying the dollar amount of the disability award otherwise payable to the injured employee. It does so in subsection (2) of KRS 342.730, which states:

"The period of any income benefits payable under this section on account of any injury shall be reduced by the period of income benefits paid or payable under this chapter on account of a prior injury if income benefits in both cases are for disability of the same member or function, or different parts of the same member or function, and the income benefits payable on account of the subsequent disability in whole or in part *would duplicate* the income benefits payable on account of the pre-existing disability." [Emphasis added.]

The plain meaning of this subsection is that an employee shall not at the same time recover "income benefits" from a preexisting injury and a new injury, i.e., he cannot recover "income benefits payable on account of the subsequent disability [which] in whole or in part would duplicate the income benefits payable on account of the pre-existing disability."

The leading case in defining "the proper approach" to computing disability benefits is *Transport Motor Exp., Inc. v. Finn*, Ky., 574 S.W.2d 277 (1978), which states as follows:

"In our view, the proper approach, whether the disability is total, as here, or partial is to employ the methodology of KRS 342.730 to determine the amount to

which the claimant is entitled by the whole of his disability. If apportionment is required by operation of KRS 342.120, the formulas provided therein are then applied to the total amount therefore [sic, theretofore] determined to give effect, in terms of dollar amounts payable or nonpayable, to the apportionment between the interested parties, the employer, the employee, and the Special Fund. This procedure gives effect to the exclusion language of KRS 342.120(4)." *Id.* at 281.

The Majority dismisses *Transport Motor Exp., Inc. v. Finn* on grounds that the now "deleted exclusionary language ... was only a part of the picture" in that case. But it is that "part of the picture" that was cut away when the exclusionary language in KRS 342.120(4) was removed. The Majority Opinion simply destroys the picture.

KRS 342.730(2), like KRS 342.120(2)(a) and (b), existed at the time of the 1982 Amendments. We must assume that the General Assembly knew what the statutory scheme was before it amended the statute, and that it intended the results of the changes it made, not only changes that benefited the Special Fund, but also changes that benefited injured workers.

Nevertheless, the Majority is emphatic in its belief that the General Assembly would not knowingly and intentionally include preexisting active disability from a noncompensable, or uncompensated, injury in an award. Even though this belief is contrary to the written word, it might be logical if the law required the employer to pay for such disability. But, of course, such is not the case. The law fixes that liability on the Special Fund. This is welfare legislation to benefit disabled workers. It is unrelated to the source of preexisting disability. There is no more reason to require the Special Fund to pay for disability caused by a preexisting "dormant non-disabling disease or condition" which contributes to the present state of disability than there is to require the Special Fund to pay for a preexisting active, uncompensated disease or condition, and no less reason to do so, because the purpose of the law is not to compensate for a wrong, but simply to provide disability income benefits to injured workers on the basis of their present state of disability. All that has happened is that the General Assembly has removed an exclusion creating an imbalance in the law from the statutory scheme.

The argument that removing the exclusion is financially unwise is not viable. In *Yocom v. Gibbs*, Ky., 525 S.W.2d 744 (1975), we addressed the same type of argument directed at a similar change in the law, as follows:

"It [the Fund] asserts that the change in language effected by the 1972 amendment will probably have disastrous financial consequences so far as its solvency is concerned....

We feel bound to regard these arguments and assertions as relevant only to the wisdom of the legislative change and to the inadvisability of the policy effected by the amendment. These matters are not for the determination of the courts, ... We are therefore bound to effectuate the clearly expressed legislative will. *Id.* at 746.

Nor do I accept the argument that the worker is being paid for nonjob related disability. This is no more true here than in the case of preexisting dormant disability generating from a nonjob related source. It is theory basic to the Workers' Compensation Law that, presumably, the worker is already employed at a reduced wage commensurate with his preexisting active disability at the time when he suffers a subsequent compensable injury. Often in practice as well as theory the nature of the work that the worker is able to command in the work force, and thus his wage, already takes into account his preexisting active disability. His reduced wage by reason of active disability preexisting his work related, compensable injury, by reducing the dollar amount to which his percentage award for disability applies, penalizes him for his preexisting active disability. The Majority Opinion means being penalized twice for preexisting active disability when new permanent partial or total disability follows from his combined disabilities. It

may well be that the exclusion in KRS 342.120(2) was deleted to cure this inequity. On the other hand, if this is but speculation, so is the position taken by the Majority that the General Assembly intended no change, despite the express language of the statute to the contrary. Speculation about the General Assembly's intention, either pro or con, is *not* the business of our Court when the statutes are plainly written, as is presently the case. The Majority should not substitute its opinion of what the Workers' Compensation law *should* cover for what the Workers' Compensation law *does* cover.

The Court of Appeals in the present case decided by unanimous Opinion it had "no choice but to give effect to the repeal of the exclusion and, therefore, ... the Special Fund is required to pay for the portion of the award that the Board considered to be a noncompensable previous active disability." Our Majority Opinion fails to explain where there is a choice. It reverses the Court of Appeals by making a policy decision based on the erroneous premise that "to hold otherwise could require the Special Fund to compensate an employee for a pre-existing disability for which he had already collected from a tort-feasor or employer, or for an injury barred by the statute of limitations, etc." This position is theoretically unsound, and, as a practical matter, a highly unlikely speculation. Certainly it falls far short of a reason to deny the plain language of the statute scheme.

I would affirm the Court of Appeals.

COMBS, J., joins this dissent.