Johnny STEPHENS *v.* STATE of Arkansas

CA CR 06-687 254 S.W.3d 1

Court of Appeals of Arkansas
Opinion delivered March 21, 2007

[Rehearing denied April 25, 2007.]

*Bill Luppen*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. A jury found appellant, Johnny Stephens, guilty of first-degree murder in the death of Jamar Jordan. On appeal, appellant argues that the circuit court erred by permitting the State to introduce as substantive evidence a witness's prior inconsistent statement and by permitting a witness to testify that he called appellant's pager for the purpose of purchasing drugs from appellant. We conclude that this evidence was erroneously admitted, and accordingly, we reverse and remand for a new trial.[1]

During the trial, the State called as a witness Dedrick Weems. Weems testified that he knew appellant and the victim, Jamar Jordan. The State asked Weems about a statement he gave to Little Rock Police Department Detective Keith Cockrell. Weems testified that the statement was untruthful, that he had only stated to Cockrell what another detective told him to state, and that he did not know if appellant shot Jordan.

The State then offered the statement into evidence. A transcript of Weems's statement begins by Cockrell stating that a deputy prosecuting attorney, Jack McQuary, was present. Mc-Quary then placed Weems under oath and told him that, if he did not tell the truth to Cockrell, he could be prosecuted for false swearing or perjury. Following this, McQuary stated, "Okay, at this time I will be leaving the interview." Cockrell then questioned Weems. To summarize the interview, Weems stated that, after he delivered cocaine to appellant and was leaving, Jordan drove by appellant's residence, stopped, and spoke to Weems. Weems stated that he then saw appellant run from the porch of a

---

[1] As a third point for appeal, appellant argues that the circuit court erred in refusing to grant a mistrial after a witness for the State testified that appellant was "locked up." During the colloquy with the court, however, the State observed that the comment by the witness was inadvertent. Given this, we do not address the issue, as it is not likely to recur on retrial.

residence and shoot Jordan several times. Weems further stated that appellant and another person, Greg Peterson, had been best friends, that Peterson had been killed, and that appellant was mad about it and had stated that if he ever caught "one of them boys slipping, I'm gonna nail one of them." Weems further stated, "So that night man, he caught Jamar slipping and dealt it."

At trial, the State offered the statement into evidence and argued that, in accordance with Rule 801(d)(1)(i) of the Arkansas Rules of Evidence and *Slavens v. State*, 1 Ark. App. 245, 614 S.W.2d 259 (1981), Weems's statement was not hearsay because Detective Cockrell took the statement after Weems had been placed under oath by a deputy prosecuting attorney. Counsel for appellant objected, asserting, among other arguments, that the statement was hearsay. The court overruled appellant's objection. On appeal, appellant again argues that the statement was hearsay.

Rule 801(d)(1)(i) provides that "[a] statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . inconsistent with his testimony and, if offered in a criminal proceeding, was given under oath and subject to the penalty of perjury at a trial, hearing, or other proceeding." The statute governing the issuance of subpoenas by prosecuting attorneys provides in part that "prosecuting attorneys and their deputies may issue subpoenas in all criminal matters they are investigating and may administer oaths for the purpose of taking the testimony of witnesses subpoenaed before them." Ark. Code Ann. § 16-43-212(a) (Supp. 2005). We note that "[a] person commits perjury if in any official proceeding he or she makes a false material statement, knowing it to be false, under an oath required or authorized by law." Ark. Code Ann. § 5-53-102(a) (Repl. 2005). For the purposes of the perjury statute, an "official proceeding" is "a proceeding heard before any legislative, judicial, administrative, or other government agency or official authorized to hear evidence under oath, including any referee, hearing examiner, commissioner, notary, or other person taking testimony or depositions in any such proceeding." Ark. Code Ann. § 5-53-101(4)(A) (Repl. 2005). In *Slavens*, this court held that a prior inconsistent statement given under oath to a deputy prosecuting attorney pursuant to a prosecutor's subpoena was admissible as substantive evidence in accordance with Rule 801(d)(1)(i).

Appellant argues that, in contrast to *Slavens*, the deputy prosecuting attorney here placed Weems under oath and then left the interview, which was then conducted by Cockrell.[2] Appellant asserts that the interrogation was not an "official proceeding" because Cockrell was not authorized to take the statement and that consequently Weems was not subject to the penalty of perjury when he answered Cockrell's questions. Appellant concludes that Weems's statement should not have been admitted under Rule 801(d)(1)(i).

 The State asserts that any complaints about the validity of the oath cannot be raised by appellant and in any event may only be raised by Weems. *See* Ark. Code Ann. § 5-53-105 (Repl. 2005) (providing that it is not a defense to perjury that the "oath was administered or taken in an irregular manner" or the "person administering the oath lacked authority to administer the oath if the taking of the oath was required by law"). But it is not the validity of the oath we are concerned about here, as we must still determine whether this was a "proceeding" contemplated by Rule 801(d)(1)(i), and this necessarily requires that we consider any attendant irregularities. Here, the prosecutor's subpoena was not used for the deputy prosecutor's investigation — who left the interrogation — but instead was used for the detective's investigation. The Arkansas Supreme Court has previously noted that it is illegal to use a prosecutor's subpoena power to obtain the presence of a witness for questioning by a police officer, absent the prosecutor. *Foster v. State*, 285 Ark. 363, 687 S.W.2d 829 (1985).

---

[2] We disagree with the State's assertion that appellant's argument was not raised below. At trial, the State sought admission of Weems's statement under Rule 801(d)(1)(i) and *Slavens*, and appellant made a hearsay objection, which the court overruled. Then, during a bench conference prior to the admission of Weems's statement, counsel for appellant argued that *Slavens* was not applicable. The State asserted that the statement was admissible under *Slavens*, where a deputy prosecutor questioned the declarant under oath. Counsel for appellant responded that the "deputy prosecutor didn't question Mr. Weems. A police officer did." The State responded that it does not "matter who questions him. The question is whether or not he was placed under oath." The court concluded that Weems was under oath, so Weems's statement was not hearsay and that according to *Slavens*, the statement could be admitted as substantive evidence. To summarize, the State sought admission of the statement, appellant argued that the statement was hearsay, the State cited *Slavens* and argued the statement was not hearsay, appellant distinguished *Slavens*, and the court concluded that *Slavens* was controlling. We conclude that appellant's argument at trial challenging the applicability of *Slavens* preserved the point for appeal.

Further, Ark. Code Ann. § 16-43-212(a) provides that prosecutors may administer oaths for the purpose of taking the testimony of witnesses subpoenaed before them, indicating that it is the prosecutor who is to take the testimony. Thus, Cockrell was not the proper party to take testimony. Moreover, given this irregularity, the statement was not taken during an "official proceeding" such that a false statement would be subject to the penalty of perjury, as Cockrell was not an official authorized to take the statement. Because the statement was taken in contravention of Ark. Code Ann. § 16-43-212(a), not by a prosecutor but instead by a police officer, and further considering that the testimony was not given at an "official proceeding" such that Weems was subject to the penalty of perjury, we conclude that the testimony was not given during a "proceeding" contemplated by Rule 801(d)(1)(i), and *Slavens* is not controlling. Thus, we conclude that the statement was improperly admitted, and accordingly, we reverse and remand for a new trial.

■ On this point, the State further asserts that reversal is not warranted because Weems's hearsay statement was cumulative to other evidence admitted without objection, particularly the testimony of the only eyewitness who testified about the shooting, Marcus Coleman. The erroneous admission of hearsay evidence is not reversible error if it is cumulative to other evidence admitted without objection. *See, e.g., Weber v. State,* 326 Ark. 564, 933 S.W.2d 370 (1996). Weems's hearsay statement, however, provided the only evidence of a possible motive for the shooting. Accordingly, the hearsay was not cumulative. Furthermore, the hearsay was not cumulative because Weems's statement was based on his own observations — not Coleman's observations. Moreover, while an evidentiary error may be declared harmless if the evidence of a defendant's guilt is overwhelming and the error is slight, *see, e.g., Green v. State,* 59 Ark. App. 1, 953 S.W.2d 60 (1997), we cannot say that the error was harmless, as the hearsay provided the jury with a second eyewitness account.

We also reverse on appellant's second allegation of error. Police discovered a pager at the crime scene and later determined that Stuart Fijo had made calls to that pager. At trial, Fijo testified that he knew appellant by the name of "Jay" and that when he called the pager, appellant would "bring me drugs." Citing Rule 404(b) of the Arkansas Rule of Evidence, appellant argues, as he did immediately prior to Fijo's testimony below, that the testi-

mony, insofar as it indicated that Fijo called appellant to obtain drugs, was not admissible because it was not relevant to the charged crime and was highly prejudicial.

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith," but that it may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence that is offered pursuant to Rule 404(b) must be independently relevant in that it tends to prove a material point. *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006).

■ The State submits that the evidence was introduced to explain how Fijo knew appellant. We conclude that while Fijo's testimony that he called the pager to contact appellant was relevant to establish appellant's identity, Fijo's testimony regarding the purpose for calling appellant was not independently relevant to prove a material point related to the murder charge. *See Green*, 365 Ark. at 497-98, 231 S.W.3d at 654 (holding that reference to a defendant's use of methamphetamine had no independent relevance to murder and kidnapping charges). Nor do we conclude, as suggested by the State, that it was part of the res gestae. With respect to drug use as part of the res gestae of the crime, the Arkansas Supreme Court has stated that evidence of drug use and drug dealing is part of the res gestae where it was intermingled and contemporaneous with the commission of the crimes charged. *Thessing v. State*, 365 Ark. 384, 230 S.W.3d 526 (2006). Here, appellant's alleged providing of drugs to Fijo was unrelated to Jordan's death. Consequently, we conclude that the circuit court improperly admitted the testimony.

Reversed and remanded.

PITTMAN, C.J., and BIRD, J., agree.