Alfred Lavorice BROWN *v.* STATE of Arkansas

CA CR 06-1374                                          265 S.W.3d 772

Court of Appeals of Arkansas
Opinion delivered October 24, 2007

*Wright & Van Noy*, by: *Herbert T. Wright, Jr.*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Alfred L. Brown appeals his conviction for second-degree sexual assault and argues that the trial court erred in denying his motion for a directed verdict and in denying his request for a continuance that was made due to a witness's inability to appear. We hold that the trial court abused its discretion in denying appellant's request for a continuance because

the denial deprived him of the opportunity to present relevant, exculpatory, and noncumulative evidence that the State failed to make available to him. Accordingly, we reverse and remand for a new trial.

Appellant was charged with two counts of rape and one count of second-degree sexual assault concerning his biological daughter, A.B. The jury acquitted him of the rape charges but found him guilty of second-degree sexual assault, which the State alleged to have occurred between January 1, 2003, and December 31, 2004.[1]

On March 3, 2006, appellant requested and received a continuance until May 10, 2006, because the doctor who performed the physical examination on A.B. was not available and because the State amended the information the week before. On March 7, 2006, appellant requested another continuance because Investigator Lenore Paladino of the Arkansas State Police was unavailable to appear at the scheduled trial. In his written motion, appellant asserted that Paladino was an essential witness because she investigated one of the rape allegations in 2004, and thus, could testify regarding the inconsistencies in A.B.'s statement given at that time. After a hearing on the issue, the trial court denied appellant's motion and all subsequent renewals thereof.

A.B. was eleven years old at the time of the trial; she was approximately ten years old when the alleged abuse took place. During this time, appellant and A.B.'s mother were separated and A.B. and her two brothers "bounced" back and forth between their parents' residences. A.B. testified that the abuse occurred when she and her two brothers lived with appellant in a two-bedroom duplex in North Little Rock. Appellant's girlfriend, her son, and her daughter, D.A., also lived with appellant at that time. During the latter part of 2004, A.B.'s half brother, A.N., also lived with them. Appellant and his girlfriend slept in one bedroom; the boys slept in the other bedroom; and A.B. and D.A. slept on the couch in the living room.

At the trial, A.B. described several incidents of abuse, including appellant rubbing her buttocks, touching her "front" private part with his finger, and attempting to penetrate her anally.

---

[1] He was also charged with the rape of another girl, D.A., but was acquitted of that charge.

She also testified that after the abuse, she had difficulty going to the bathroom and experienced back pain, so much so that her grand-mother took her to the doctor. D.A., the other alleged victim in this case, testified that A.B. told her what appellant was doing to her.

A.B.'s testimony was, in some respects, inconsistent with what she told the investigating officers. For example, she did not remember telling the officers that appellant put his private into her behind or put his finger into her vagina. A.B. admitted that she falsely reported that her foster mother had struck her because the foster mother refused to allow A.B. to use the telephone. A.B. also admitted that she was not happy about her parents' separation but she denied that she was fabricating the abuse allegations to "get back" at her father.

A.B. was examined by Dr. Becky Latch, a pediatrician at Arkansas Children's Hospital. Dr. Latch was recognized at trial as an expert on child abuse. She examined A.B. in January 2005 and found normal results, meaning no physical signs of sexual abuse. However, Dr. Latch explained that even in cases where the perpetrator has admitted to abuse, as many as 90% of the children have normal exams because the anal and vaginal tissue heal very quickly.

Dr. Latch also explained that bowel trouble and back pain can result from anal abuse because the trauma of putting something into the anus can damage the nerves to the extent that a child will not recognize that they need to have a bowel movement. This leads to constipation, which, in turn, leads to back pain.

Detective Phil Lowery, who interviewed appellant, testified that appellant repeatedly denied abusing A.B. However, during this interview, appellant also admitted that he was addicted to methamphetamine, crack, "pills," and alcohol during that same time-period. At one point during the interview, appellant said, "Man, she's got to be making that up, man. I was under the influence a lot, man but wasn't under it that darn much." How-ever, when Lowery asked appellant if A.B. would be lying if she said appellant touched her with his private part, appellant re-sponded, "I don't know, man. It just depend [sic] on how I was when I was, you know, I was on drugs." When asked if the abuse could have happened while he was under the influence, appellant responded, "Man, when I was doing drugs, anything's possible, man."

Appellant testified, admitting his history of alcohol and drug abuse, but denying that he ever touched A.B. in a sexual way. Appellant said that, when he made the "anything's possible" statement, he was not referring to sex. He insisted that, when he was high, sex was "the farthest thing from my mind."

Appellant said A.B. admitted to him that she was not happy living with "all the boys" and that she made the allegation because she wanted to live with her mother or grandmother. He also said that she made the allegation the day after he "moved her back into the house" from her mother's house.

Norvella Watson, appellant's mother, testified that, while A.B.'s parents were separated, A.B. made a sexual allegation against appellant, which was investigated by Investigator Paladino. According to Watson, A.B. retracted the statement and admitted to Watson that she lied because her Aunt Kimmie (A.B.'s mother's friend) told A.B. that, if she made the allegation, she would be allowed to live with her mother.

Watson further testified that on one occasion A.B. falsely accused her brother of hitting her and pushing her down. Watson said that she watched A.B. throw herself to the ground and deliberately hit her head on the floor because she wanted a toy that her brother had.

A.N., appellant's son and A.B.'s half-brother, testified regarding the layout of the duplex, explaining that the duplex was small and that the view of the living room was unimpeded once a person stepped out of the bathroom or the bedrooms. He also said that he never saw appellant act inappropriately toward A.B. and that appellant did not take drugs in front of the children.

At the close of the State's evidence, appellant moved for a directed verdict on the second-degree sexual assault charge, asserting that the testimony regarding sexual contact was inconsistent. The trial court denied that motion and the subsequent renewal of the motion. The jury found appellant guilty of second-degree sexual abuse and sentenced him as a habitual offender to serve twenty-three years in prison.

## I. Sufficiency of the Evidence

A defendant's right to be free from double jeopardy requires a review of the sufficiency of the evidence prior to a review of any asserted trial errors. *See Flowers v. State*, 362 Ark. 193, 208 S.W.3d

113 (2005). Thus, we first examine the trial court's denial of appellant's motion for a directed verdict. We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *See Geer v. State*, 75 Ark. App. 147, 55 S.W.3d 312 (2001). We view the evidence in the light most favorable to the State and consider only evidence that supports the verdict. *See Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004). We affirm if substantial evidence supports the verdict. *Id.* Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *See id.*

A person commits sexual assault in the second degree if the person, being eighteen years of age or older, engages in sexual contact with another person, who is less than fourteen years of age and who is not the person's spouse. Ark. Code Ann. § 5-14-125(a)(3) (Repl. 2006). Sexual contact means any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female. Ark. Code Ann. § 5-14-101(9) (Repl. 2006).

Appellant argues that the trial court erred in denying his motion for a directed verdict because the evidence regarding sexual contact was so clearly unbelievable that reasonable minds *could differ* thereon (emphasis added). He points to the fact that A.B. falsely accused her foster mother of striking her because A.B. was angry at her foster mother, that appellant denied the abuse, that Antonio testified it would have been impossible for appellant to have abused A.B. without being seen, and that A.B. gave one officer "a different story" than she described at trial.

▮ Appellant's argument fails for several reasons. First, he misstates and misapplies the law concerning inconsistent testimony. Where inconsistent testimony has been given credence by the trier-of-fact, this court will not reverse a credibility determination unless the testimony is inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could *not* differ thereon. *See Kitchen v. State*, 271 Ark. 1, 607 S.W.2d 345 (1980). Thus, by appellant's own admission that "[T]he testimony of A.B. Brown is clearly so unbelievable that reasonable minds *could differ* thereon," appellant concedes that the trial court properly submitted the issue to the jury.

▮ Second, A.B.'s testimony that appellant touched her vagina with his finger and rubbed her buttocks constitutes substantial evidence to support appellant's conviction for second-degree

sexual assault. A victim's testimony, alone, may constitute substantial evidence to support a conviction. *See Ellis v. State*, 364 Ark. 538, 222 S.W.3d 192 (2006). Thus, the fact that there was no physical evidence of trauma did not prevent the jury from finding appellant guilty, especially in light of Dr. Latch's testimony explaining that the lack of physical findings is not unusual, even where the offender admits to penetration.

■ Third, the jury was not required to believe appellant's testimony, as he is the person most interested in the outcome of the trial. *See Winbush v. State*, 82 Ark. App. 365, 107 S.W.3d 882 (2003). Fourth, appellant mischaracterizes A.N.'s testimony. A.N. described what apparently is a small duplex, which has an unblocked view of the living room once a person exits a bedroom or the bathroom. However, he did *not* testify that the abuse could not have occurred in the house without someone else seeing it.

■ Finally, appellant maintains that the jury did not believe A.B.'s allegations that he raped her, so it obviously found her not to be a credible witness. In fact, we do not know why the jury failed to convict appellant on the rape charges. However, even if the jury found A.B.'s testimony regarding the rape to be not credible, it was not precluded from giving credence to her testimony regarding the sexual assault. Inconsistencies in the testimony of a rape victim are matters of credibility for the jury to resolve, and it is within the province of the jury to accept or reject testimony as it sees fit. *See Williams v. State*, 331 Ark. 263, 962 S.W.2d 329 (1998). Accordingly, we hold that the trial court did not err in denying appellant's motion for a directed verdict.

## II. Continuance

Nonetheless, we reverse and remand this case for a new trial because we hold that the trial court abused its discretion in denying appellant's motion for a continuance. We review the grant or denial of a motion for continuance under an abuse-of-discretion standard. *See Stenhouse v. State*, 362 Ark. 480, 209 S.W.3d 352 (2005). An appellant must not only demonstrate that the trial court abused its discretion by denying the motion for a continuance but also must show prejudice that amounts to a denial of justice. *Id.*

■ A court shall grant a continuance "only upon a showing of good cause and only for so long as necessary, taking into account not only the request or consent of the prosecuting

attorney or defense counsel, but also the public interest in prompt disposition of the case." Ark. R. Crim. P. 27.3. Factors a trial court should consider in deciding a continuance motion include (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement; and (4) the filing of an affidavit that states not only what facts the witness would prove but also that the appellant believes them to be true. *See Stenhouse, supra.*

In addition, a party requesting a continuance due to the absence of a witness must submit an affidavit showing the materiality of the evidence expected to be obtained and that due diligence has been used to obtain it. Ark. Code Ann. § 16-63-402(a) (1987). The affidavit must show 1) what facts the affiant believes the witness will prove and may not merely show the effect of the facts in evidence; 2) that the affiant himself believes them to be true; 3) that the witness is not absent by the consent, connivance, or procurement of the party asking the postponement. *See* Ark. Code Ann. § 16-63-402(a) (1987).

Appellant attached an affidavit to his motion for a continuance from his counsel, asserting that Paladino was unavailable to testify on May 10 and 11; that she was unavailable for trial; that she was an essential witness because she investigated a rape allegation made by A.B. in 2004, which she determined to be unsubstantiated; and that Paladino would testify regarding the inconsistencies and untruths in A.B.'s statement at that time.

At the March 24 hearing on appellant's motion, appellant's counsel explained that Paladino found the 2004 abuse allegation by A.B. to be unsubstantiated and that Paladino's report was not part of the State's case file but had been uncovered by her own investigation.[2] She asserted that Paladino was an essential witness because Paladino could testify about inconsistencies in A.B.'s 2004 statement, about the fact that there was no penetration alleged, and about some falsehoods regarding other incidents. Counsel also indicated appellant's willingness to the try the case the week before or after May 10-11.

---

[2] At the first hearing in this case, held in August 2005, appellant was originally represented by a public defender who also represented A.B.'s mother, because both parents had been charged with permitting the abuse of a child. In January 2006, the public defender was allowed to withdraw, citing a conflict. Another public defender was appointed to represent appellant, and she discovered Paladino's statement.

The State conceded that it would not be prejudiced by a continuance, particularly if the trial was moved forward, but noted that on May 22, the nine-month period for trying a case involving a victim under fourteen would elapse. The court stated that it did not appear that it could accommodate appellant's request. Appellant countered that the court could hold the trial beyond that date but that it would merely be required to explain in writing why the defendant had not been tried within the nine-month period.[3]

The court then asked why Paladino could not appear. Counsel explained that Paladino was going to be out-of-state but did not know why. The court responded, "Well, the court is still not inclined to continue it until I hear from her as to why she can't do this." Counsel further explained that Paladino was going to Florida but did not know whether it was for personal or business reasons. The court responded, "The court's just not going to move it at this point and see if you can rely upon her to be here." Counsel reminded the court that the case was transferred to her in January, that she found Paladino's report by her own investigation, and that she did not know "why it wasn't investigated earlier."

The court replied:

> I understand. . . . I just think you need to subpoena her and *it's up to her to make a request to have the subpoena quashed and that she has a valid reason.* If it's something that's really dire that she can't get out of, then the court might reconsider, but at this point, the Court's going to leave it where it is and it's up to her to be here pursuant to her subpoena.

(Emphasis added.)

Appellant's counsel again raised the issue at the omnibus hearing held on April 11, 2006. She again asked to reschedule for the week before or after the scheduled trial date. The court asked if Paladino was an indispensable witness. Counsel again explained that Paladino was indispensable, that Paladino was unavailable to

---

[3] Pursuant to Ark. Code Ann. § 16-10-130 (Repl. 1999), barring extraordinary circumstances, a trial court shall give precedence to criminal trials in which the alleged victim is under fourteen years old. When a case affected by § 16-10-130 is not tried within nine months following arraignment, Administrative Order No. 5 requires the circuit judge to inform the Administrative Office of the Courts in writing of the reason for the delay.

testify on May 10 and 11, and again explained the basis of Paladino's testimony. Counsel further offered Paladino's affidavit, which was marked for identification as Defendant's Exhibit Number 1.[4] The court again denied the motion, suggesting that appellant's counsel videotape Paladino's testimony.

At the beginning of the trial, counsel renewed her motion for a continuance, reminding the court of the nature of Paladino's expected testimony. She further explained that Paladino had been subpoenaed. By this time, counsel had obtained Paladino's 2004 report and proffered it as Defendant's Exhibit 1. The State, for the first time, objected that Paladino's testimony would violate Arkansas's Rape Shield Law, but the trial court did not rule on that objection. The trial court again denied appellant's motion but accepted Paladino's 2004 report as proffered.

The State now argues that, because a party may not choose a course of action that it knows will invite a claim of error, *see* *McGhee v. State*, 330 Ark. 38, 954 S.W.2d 206 (1997), appellant is not entitled to complain on appeal because he did not attempt to have Paladino's subpoena quashed and did not attempt to obtain Paladino's video testimony. It also argues that appellant has failed to demonstrate prejudice amounting to a denial of justice because Paladino's testimony would be cumulative. The State notes that the jury was informed about A.B.'s history of making false accusations against her father, her foster mother, and her brother. It further notes that the jury was specifically informed that Paladino had investigated a sexual-abuse claim by A.B. against her father but determined that the claim was unsubstantiated because A.B. continued to periodically live with her father after the investigation.[5]

---

[4] Appellant did not include Paladino's affidavit in his brief. However, the substance of this affidavit is apparent from the proceedings that were abstracted and from the parties' arguments. In fact, in its brief, the State concedes that in her affidavit, Investigator Paladino explained that she had investigated a sexual abuse allegation by A.B. against appellant for which Paladino made "no report" due to a lack of evidence; stated that she was subpoenaed to testify and could not attend the trial on May 10 and 11 because she would be gone on an out-of-state trip that had been paid in full; and asserted that her inability to make the trip would cause an undue hardship on her and her family.

[5] The State also argues that Paladino's testimony regarding A.B.'s false claim of sexual abuse was inadmissible under Arkansas's Rape Shield Law. *See* Ark. Code Ann. § 16-42-101(b) (Repl. 1999). However, as the trial court has not yet ruled on the admission of Paladino's testimony, the issue is not ripe for appellate review. *See State v. Jones*, 338 Ark. 781, 3 S.W.3d 675 (1999); *Rose v. State*, 72 Ark. App. 175, 35 S.W.3d 365 (2000).

We disagree. We recognize that the abuse of discretion standard is a high threshold that does not simply require error in the trial court's decision but requires that the trial court must have acted improvidently, thoughtlessly, or without due consideration. *See Grant v. State*, 357 Ark. 91, 161 S.W.3d 785 (2004). However, as discussed further herein, this is a rare case in which each of the factors a trial court is to consider when granting a continuance weighs in the defendant's favor and, further, the denial of appellant's request for a continuance denied him the opportunity to present relevant, exculpatory, noncumulative evidence that the State failed to make available to him. If reversal is not warranted here, then we cannot discern when reversal would ever be appropriate pursuant to the abuse-of-discretion standard.

## A. Diligence of the Movant

Appellant did all that a defendant is required to do to secure a continuance — even the State does not argue that he was dilatory in filing his motion. To begin, he made a timely request for a brief continuance for either the week before or after the trial. Appellant's counsel timely notified the trial court of the problem by moving for a continuance sixty-four days prior to trial and by providing the necessary affidavits. Appellant also took diligent measures to secure Paladino's presence; he did subpoena her. He also repeatedly and thoroughly informed the trial court of the substance of her expected testimony. In short, appellant's diligence weighed in favor of granting him a continuance.

Yet, in spite of appellant's diligence, the trial court denied the request for a reasonable and brief continuance. A defendant is not required to show that his *witness* attempted to have the *witness's subpoena* quashed — in fact, we do not understand how a *defendant* could force a *witness* to have the witness's subpoena quashed. Although the appellant was indigent, the trial court reasoned that he could videotape Paladino's testimony.

## B. Probable Effect of the Testimony at Trial

Additionally, appellant amply demonstrated the probable effect of the testimony at trial. Via his motion for a continuance, his arguments to the court, and his affidavits, appellant repeatedly informed the court that Paladino was an essential witness because she found a prior complaint of sexual abuse by A.B. against appellant to be unsubstantiated due to inconsistencies in A.B.'s statement.

Moreover, appellant also demonstrated prejudice that amounted to a denial of justice because he was denied the opportunity to present relevant, exculpatory, noncumulative evidence that the State failed to make available to him. Paladino's testimony was relevant because it was necessary to enable the jury to properly assess A.B.'s credibility. *See, e.g., Hice v. State*, 11 Ark. App. 184, 668 S.W.2d 552 (1984)(reversing and remanding where the trial court excluded testimony about a police officer's alleged refusal to administer a breathalyzer test and his subsequent charge against the appellant for refusal to take the test, holding that was evidence the jury should have been allowed to consider as bearing on the officer's credibility).

Here, Paladino's testimony was especially crucial given that the allegation she investigated (that appellant touched A.B.'s vagina), if supported, would have resulted in the *same charge* for which appellant was ultimately convicted — second-degree sexual assault. Thus, Paladino would have testified that A.B. had previously *falsified the same charge* against appellant based on the *same conduct* (plus the additional conduct of touching her buttocks).

Moreover, Paladino's testimony would not have been merely cumulative. Watson (appellant's mother and A.B.'s grandmother) testified that while A.B.'s parents were separated, A.B. made a sexual allegation against appellant, which was investigated by Paladino. According to Watson, A.B. admitted to Watson that she lied because her mother's friend told A.B. that if she made the allegation, she would be allowed to live with her mother.

Nonetheless, testimony that the victim admitted to her grandmother that she made a prior false accusation of sexual abuse differs starkly from an *independent conclusion reached by a police investigator* that the victim's allegation was unsubstantiated. That is, Paladino's report and testimony would not be cumulative because they would be based on her *own* observations, not on any statement that A.B. made to her grandmother or anyone else, and because Paladino *alone* would have testified as to the *basis for her conclusion* — that is, exculpatory evidence that Watson did not provide, that was not otherwise made known to the jury, and that was essential for the jury to determine whether A.B. was a credible witness. *See, e.g., Stephens v. State*, 98 Ark. App. 196, 254 S.W.3d 1 (2007) (holding that an officer's hearsay statement was not cumulative to the eyewitness's testimony where the officer's statement provided

the only evidence of a possible motive for the shooting and where the officer's statement was based on his own observations, not the eyewitness's observations).

## C. Other Factors

The other factors a trial court should consider also weigh in favor of granting appellant's motion for a continuance. Appellant subpoenaed Paladino and obtained her affidavit, in which she alleged that she would not be available the week of May 10-11. The State does not allege that appellant failed to comply with the affidavit requirement or that he failed to show the likelihood that Paladino would appear as a witness if the trial was rescheduled.

Appellant also demonstrated that the continuance was requested for good cause after his own counsel independently discovered Paladino's report, which was not part of the State's discovery file. Although appellant does not allege a discovery violation, the point is that the reason for the delay was not within appellant's control or due to his failure to investigate his case.

As for the public interest in prompt disposition of the case, the State, in a rare move, conceded that it would not be prejudiced by a continuance. While the trial court was properly concerned with running afoul of the nine-month "deadline" for trying cases in which the victim is younger than fourteen years old, the court would merely have been required to submit a letter to the Administrative Office of the Courts explaining the reason for the delay. *See* Admin. Order No. 5. This minor administrative concern pales in comparison to the probative value of Paladino's anticipated testimony or the defendant's right to a fair trial.

## III. Conclusion

In sum, it is undisputed that appellant was diligent in requesting a continuance and in informing the trial court of the basis thereof, which, also undisputedly, was a matter that was beyond his control. Appellant indicated his willingness to try the matter the week before or after the scheduled trial, so he did not ask for a lengthy continuance. In any event, the State conceded it would not be prejudiced by a continuance. In denying appellant's motion for a continuance, the trial court held him to a higher standard than is normally required to obtain a continuance and denied him the opportunity to present relevant, exculpatory, noncumulative evidence that was discovered by his counsel's own

investigation. On these facts, we hold that the trial court abused its discretion in denying appellant's motion for a continuance, and reverse and remand this case for a new trial.

Reversed and remanded.

HART, MARSHALL, HEFFLEY and MILLER, JJ., agree.

PITTMAN, C.J., GLADWIN, BIRD and VAUGHT, JJ., dissent.

LARRY D. VAUGHT, Judge, dissenting. Although I am in agreement with the majority as to the rigid review standard that we must apply to allegations of error flowing from a trial court's denial of a continuance request, I cannot agree with its ultimate disposition of this case. Therefore, I dissent.

It is well-settled law that whether a motion for continuance should be granted lies within the discretion of the trial judge, and the judge's decision will not be overturned unless the court abused that discretion by acting arbitrarily or capriciously, *Roe v. Dietrich*, 310 Ark. 54, 835 S.W.2d 289 (1992). Further, an appellant must not only demonstrate that the trial court abused its discretion by denying the motion for a continuance but also must show prejudice that amounts to a denial of justice. *See Cherry v. State*, 347 Ark. 606, 66 S.W.3d 605 (2002). As such, I believe that there was no error in denying Brown's motion for a continuance because the record does not show arbitrary or capricious action by the trial judge or that Brown was denied justice.

At the outset, I note that the majority makes much ado over Brown's vigorous pursuit of witness Paladino's testimony. For purposes of my dissent, I will concede Brown's diligence in relation to the continuance, despite it being less than perfect — Brown made no attempt to procure (as suggested by the trial court) the video-taped testimony of a seemingly accommodating state-employee witness. Further, I agree with the majority that the trial-court's continuance denial cannot be affirmed solely on the State's theory that Paladino's testimony is cumulative to that offered by the child's grandmother. Although testimony from the child's blood-relative of close consanguinity that the child had a history of making false accusations appears to me to be far more damning than the "independent" conclusion that "due to lack of evidence" Paladino made "no report," it cannot be overlooked that, in addition to being the child's grandmother, Watson is also the mother of the defendant.

In light of these disclaimers, I concentrate my discussion on the probable effect and the relevance of the absent testimony. First, I note that the affidavit outlining the testimony Paladino would present at trial was not included in Brown's brief to our court, yet the majority manages to recount the substance of the affidavit in a footnote. Rule 4-2(a)(6) of the Rules of the Arkansas Supreme Court requires that an appellant present us with an abstract of those parts of the record that are necessary to an understanding of the issues presented for decision. Clearly, the burden is on an appellant to bring up a record sufficient to demonstrate reversible error. *Cox v. State*, 66 Ark. App. 134, 991 S.W.2d 611 (1999). As our supreme court has succinctly stated, the record on appeal is limited to that which is abstracted. *Allen v. State*, 326 Ark. 541, 932 S.W.2d 764 (1996) (reversing the court of appeals and reinstating a conviction where this court had gone to the record to reverse). To the extent the majority relied on the substance of Paladino's affidavit to support its reversal of Brown's conviction, it did so in error.

Second, the actual insight that Paladino was prepared to offer relating to the child-victim's credibility was specious at best. I do not understand how the majority finds resulting prejudice from a witness being denied the opportunity to offer testimony that would likely be inadmissible. Our supreme court has specifically stated that it is error for the court to permit an expert, in effect, to testify that the victim of a crime is telling the truth. *Hill v. State*, 337 Ark. 219, 224, 988 S.W.2d 487 (1999). In *Logan v. State*, 299 Ark. 255, 773 S.W.2d 419 (1989), our supreme court reversed where it concluded that answers to hypothetical questions resulted in doctors informing the jury that in their opinion the victim was telling the truth. In *Johnson v. State*, 292 Ark. 632, 732 S.W.2d 817 (1987), the court stated that a doctor improperly conveyed to the jury his opinion that the victim was telling the truth when the doctor opined that an act had occurred that was detrimental to the victim and that opinion was based only on the victim's statements to the doctor. Finally, in *Russell v. State*, 289 Ark. 533, 712 S.W.2d 916 (1986), the court held that a psychologist improperly testified that a victim's statements were consistent with a child who had suffered sexual abuse.

Following this line of supreme court cases, in *Cox v. State*, 93 Ark. App. 419, 220 S.W.3d 231 (2005), our own court adopted a strict position on an expert offering credibility testimony. In *Cox*, we said that the child-victim's testimony alone was sufficient to support the rape conviction, but that the case had to be reversed

because the trial court allowed a well-trained social worker to repeatedly testify about the victim's high level of credibility.

In this case, we know that Paladino was prepared to testify that because the victim's allegation against Brown contained inconsistencies, "no report" was filed. However, I can find no mention — either in the abstract or the majority opinion — of the actual substance of these "inconsistencies." It does not matter whether you classify this expert's potential testimony as either a bald-face conclusion or an "independent" opinion as to the victim's lack of veracity — it would have been error to allow it into evidence. There is nothing in Paladino's report (or omitted affidavit) to establish a pattern of perjury or empirical proof (even in minute measure) that the crime did not occur.

As such, I cannot agree that the trial court acted both arbitrarily and capriciously by refusing to grant Brown's continuance. The trial court's ability to control its own calendar is insulated from appellate review — as prescribed in our review standard — except in the most extreme cases of abuse. This is not such a case. Considering the lack of relevance and probable effect of this potential testimony coupled with the extraordinarily high threshold of prejudice Brown had to demonstrate — the majority's decision to require that this convicted rapist receive a new trial confounds me.

PITTMAN, C.J., GLADWIN and BIRD, JJ., join.